TURNAGE *v.* MATKIN.

5-1184                                             299 S. W. 2d 831

Opinion delivered March 18, 1957.

*Charles S. Harley, Robert C. Downie,* and *Edward L. Wright; Wright, Harrison, Lindsey & Upton,* for appellants.

*Forrest E. Long,* for appellee.

J. Seaborn Holt, Associate Justice. This is a suit on a note, — secured by a chattel mortgage, — for an alleged balance due in the amount of $5,080.12 plus 6% interest. Trial resulted in a decree for appellants in the amount of $700.50, and they have appealed. Appellants are engaged in the wholesale lumber business with offices in Little Rock, Arkansas and appellee owns and operates a sawmill in Augusta, Arkansas. Beginning in September 1952 appellants made advances to, and began purchasing lumber from, appellee from time to time. This method continued up to January 9, 1953, when appellee's account with appellants had grown to a substantial amount, he gave appellants his note for $10,000, secured by a chattel mortgage on 250,000 feet of lumber and certain sawmill equipment. On this date appellants advanced appellee $4,000. The mortgage covered all future advances to appellee (Matkin) as well as his indebtedness to appellants. The mortgage was in the usual form, except that it contained this added provision, — "This mortgage contains the entire agreement between the parties named herein and no verbal agreement shall be binding."

Following the above loan to appellee, appellants handled 79 carloads of lumber from appellee's mill, and an accounting for these 79 cars of lumber is here involved. A typical shipment transaction between the parties here shows that an instrument styled "purchase order" was sent from appellants to appellee, which called for shipment of a car of lumber to another designated company or customer, and recited that the lumber was "sold to" appellant company. The mill owner, appellee, then secured a bill of lading which showed that this car was being shipped to the designated customer or consignee named in the purchase order and not to appellant. The bill of lading also showed appellant (Turnage Lumber Company) as shipper. Immediately appel-

lee would issue an invoice to appellant, showing quantities of lumber shipped and prices. The prices tallied with those quoted on the previously received "purchase order." After appellant received the invoice and bill of lading, he (appellant) issued another invoice to the customer, consignee, shown on the bill of lading, which invoice in practically every instance, showed an increase in price over that sent to him (appellant) by appellee. Following notice of receipt of the lumber by the consignee (customer), appellant credited appellee's note with the original invoice price of the lumber (from appellee to appellant) less 2% discount plus an 8% commission, as of the date the customer reported receipt of the lumber.

The primary, — and it appears the decisive, — question presented is one of fact, whether appellant was in the circumstances (as appellee contends) appellee's broker or commissioned agent selling appellee's lumber on an 8% commission basis and bound to credit appellee's note (or account) with the proceeds of the sales of the lumber to customers, after deducting his commission; or whether, — as appellant contends, — that he, appellant, was the purchaser of the cars of lumber from appellee and became the owner absolutely of same on the date the lumber was delivered to the railroad company by appellee and invoices issued to appellant, and that it was no concern of appellee what profit appellant made on the several cars over and above the price at which appellee invoiced same to appellant. The trial court sustained appellee's contention that appellant was appellee's agent. There appears to be no dispute that appellant did receive profits (or "overage") above the invoices from appellee which if applied on appellee's note would leave the balance due of $700.50, as the trial court found.

Appellant argues that the chattel mortgage above contains the entire agreement of the parties and that they are bound by its provisions. Appellee admits the debt. Clearly, we think, he had a right to agree with appellant how sales of the mortgaged lumber would be handled by appellant and the proceeds from such sales

applied on appellee's note or debt to appellant. This in no way violated the provisions of the mortgage.

On the fact question: we try the case *de novo* here; unless the preponderance of the evidence appears to be against the chancellor's findings we must affirm. See *Lupton* v. *Lupton,* 210 Ark. 140, 194 S. W. 2d 686. Our rule also is "that the judgment of the chancellor on the question of the preponderance of the evidence will be considered as persuasive when the evidence is conflicting, and evenly poised, or nearly so." *City of Little Rock* v. *Newcomb,* 219 Ark. 74, 239 S. W. 2d 750. Also see *Brown* v. *Ozark Black Marble Co. et al., Ozark Black Marble Co.* v. *Stephenson, et ux,* 222 Ark. 280, 258 S. W. 2d 882.

Appellee testified positively that his agreement with appellant was that appellant was to act as his agent or broker to sell the 79 cars of lumber on a commission of 8%, in addition to 2% discount, and the 6% interest on the note, and that the first knowledge that he had that appellant was claiming otherwise, was when the present suit was filed May 5, 1954. Appellant denied any such agreement. He testified that he purchased outright the 79 cars from appellee and was to have a 2% and an 8% discount on each. Appellant also testified that "title to the property (lumber) changes hands the minute the producer (appellee) turns over to the carrier the lumber and issues an invoice to the wholesaler (appellant)." In this connection it appears undisputed that appellant was charging appellee 6% interest on appellee's note up to the date the customer, or consignee, actually received the lumber and acknowledged same to appellant, and not from the date that appellant claims he purchased and became the owner of each car of lumber from appellee. On practically every shipment more than two weeks elapsed before the consignee acknowledged receipt to appellant.

A special master (an attorney) took voluminous testimony, observed the witnesses and obviously was in a better position than this court to evaluate all the evidence adduced. His findings, which we think are sup-

ported by the testimony, contains this recital: ". . . that term '8 per cent commission,' entered as a charge against defendant (appellee) at various places in the account against defendant and in the settlement sheets on the 79 cars of lumber and in the monthly statements furnished the defendant, was a commission to plaintiff for handling the lumber for defendant, as the defendant, W. E. Matkin, testified. On the basis of the foregoing record, together with the entire record, the master finds that plaintiff handled the sale of defendant's lumber as a commission agent and that it was proper for the plaintiff (appellant) to couple this agency with the mortgage interest he had in the lumber sold, and to carry on the transactions in the name of the plaintiff so that the proceeds from the sale of the mortgaged lumber might be properly and certainly credited to the mortgage debt which the defendant owed to the plaintiff. . . . that the profit made by plaintiff on the cars of lumber handled for defendant was a secret profit and that same was kept undisclosed by plaintiff . . ."

We do not attempt to detail the testimony. It appears to be in irreconcilable conflicts. It suffices to say that after considering it all, we hold that the preponderance thereof was not against the chancellor's findings. We have not overlooked other alleged errors by appellants, we find each to be without merit.

The decree is affirmed.