## THOMAS M. MUNN v. LILLIAN RATELIFF

5-5022                                                446 S. W. 2d 664

Opinion delivered November 10, 1969

610

*Basil H. Munn,* for appellant.

*Tompkins, McKenzie & McRae,* for appellee.

FRANK HOLT, Justice. Appellee stopped appellant from using a one-half mile road which traverses appellee's enclosed lands from a highway to appellant's unoccupied lands. The appellant then sought a mandatory injunction to require appellee to remove her gate across the road and to enjoin her permanently from maintaining the gate or in any manner interfering with appellant's use of the road. Appellant alleged the road is a public one. The appellee denied that the road was a public way and asserted that it had been abandoned for many years and that she had regularly maintained the fence or gate across the road for more than seven years. By counterclaim the appellee alleged that the boundary-line

fence between them at the other end of the road was a partnership fence and that appellant should be required to keep the gate in this fence closed. In his reply appellant asserted that he was the sole owner of this fence and gate since they were located upon appellant's lands.

The court found: "That said road is not now and has not been a public road for more than 10 or 11 years; that a gap or gate was erected by the Defendant [appellee] across said road some 10 or 11 years ago and the use of said road thereupon became permissive and prescription ceased and that Defendant [appellee] has the right to maintain said gate across said road and to lock said gate, and that Plaintiff [appellant] should be restrained from using said road without the permission of the Defendant [appellee.] The Court further finds that the fence and gate on the Defendant's [appellee's] south boundary line between her lands and the lands of the Plaintiff [appellant] is a partition fence and gate and must be maintained by both parties."

The court restrained and enjoined the appellant from the use of the road without appellee's permission and further ordered the appellant to keep closed the partnership gate which is located where the road stops at appellant's property.

For reversal appellant first contends that the findings of the chancellor that the road is not now a public one and that any prescriptive public rights in the road have been abandoned for more than seven years are against the preponderance of the evidence. In our view the chancellor is correct.

Appellee and her husband purchased their lands in 1952 from other members of appellee's family. This was her homeplace and she had resided there "off and on" all of her life. In 1958 appellee and her husband, now deceased, moved into a house on their property. In 1966 appellant acquired the adjoining and unoccupied lands

with the intention of operating a poultry and cattle business. To facilitate this business venture he deemed it necessary that poultry and feed trucks be permitted to use the "access road" across appellee's lands to his property. The appellant lives about one mile from the land he had purchased. It appears that no one has lived on this land since 1961. Appellant's predecessor in title, his uncle, testified that he acquired the land in 1953 and except for some weekends and a six-week period in 1957, he did not reside there.

Many years ago this road forked at appellant's boundary line with one prong turning west along the north line of the land now owned by appellant and the other crossing his land. Gradually people moved from this area and it is undisputed that for the past 15 to 20 years the road has stopped at appellant's and appellee's common boundary line.

There was evidence adduced on behalf of appellant that this half-mile road extending south from a highway and across appellee's land to appellant's north boundary line was the only suitable means of reaching appellant's land; this was the only road "that a car could travel;" the road had been used by the public for the past 20 years or more; the road was worked regularly by the county from 1945 to 1952; the county "bladed" the road a "couple of times and maybe more" from 1953 to 1966 when appellant's uncle, or predecessor in title, owned the land; the road was worked by the county as recently as 1964; a school bus had used the road; the gate to which appellant objects was first erected across the road in June 1964 with permission of appellant's predecessor in title as an "accommodation" to appellee's husband; and this gate was never continuously closed.

The appellee introduced evidence that appellant has access to his property by a passable road which he has used in the past; no one has lived on the land now owned

by appellant for any appreciable length of time since 1952; the road has not been traveled by a school bus since 1954 and then no further than up to appellee's family home; the road has not been used by the general public for the past 20 years and that during this time the road goes no further than to appellant's adjoining property line; that the only use of the road in recent years has been occasional use by hunters and then with permission; that the gate now maintained by appellee was erected by her father many years ago; that in the distant past this wire gap was sometimes open and sometimes shut and that the gate has been in the same location for over 30 years; and that appellee has kept this gate closed regularly since 1958. A neighbor of both parties testified that from his personal observation there had been a wire gap across the road since 1931 when he moved into the area and that appellee began closing the gate on a regular basis 10 or 11 years ago. Appellee's lands are enclosed.

The rule is well established that when a gate is maintained for more than 7 years across a road in which the public has a prescriptive easement, then it is deemed that the public has abandoned the road and the landowner has the right to close it permanently and restrict the road to permissive use. *Brooks* v. *Reedy,* 241 Ark. 271, 407 S. W. 2d 378 (1966); *Nelms* v. *Steelhammer,* 225 Ark. 429, 283 S. W. 2d 118 (1955); *Mount* v. *Dillon,* 200 Ark. 153, 138 S. W. 2d 59 (1940); *Porter* v. *Huff,* 162 Ark. 52, 257 S. W. 393 (1924). In these cases we recognized the rule that the installation of the gap or gate was notice to the public that the road was being used by permission and not as a matter of right. It is the existence of the gate and not how continuously it is closed that constitutes notice. In *Brooks* v. *Reedy, supra,* we said: "* * * But it is, we think, clearly established that the gates were in existence at all times from 1952 on, whether up or down." And further: "* * * It may well be that those using the roadway did not always put up the gaps; however, be that as it may, the important

fact is that the fence and gates were in place for the statutory period, and, under the language in *Mount* v. *Dillon, supra,* the fact that the gates were not always closed does not make any difference."

In the case at bar the chancellor had the opportunity to see and hear the witnesses in evaluating the evidence which was in conflict. In such a situation our rule is that when the evidence is conflicting and evenly poised or nearly so, the judgment of the chancellor on the question of where the preponderance of the evidence lies is considered as persuasive. *Turnage* v. *Matkin,* 227 Ark. 528, 299 S. W. 2d 831 (1957). In view of this well established rule and after a review of the testimony and exhibits presented in the case at bar, we cannot say the findings of the chancellor are against the preponderance of the evidence.

Appellant next asserts that Ark. Stat. Ann. § 37-109 (Repl. 1962) "ought to apply to this road." He argues that by the terms of this statute the public rights to this road cannot be abandoned or in other words, once a public road always a public road until closed by a county court order. We cannot agree. We construed this statute in *Raney* v. *Gunn,* 221 Ark. 10, 253 S. W. 2d 559 (1952) and there held that the public could abandon any prescriptive rights it had acquired to a road. Appellant insists that we should now overrule this case. We adhere to the decision in that case.

The appellant also contends that the trial court erred in dismissing "appellant's complaint for want of equity when he had a right, by reason of his special interest in the road, to maintain his action." We find no merit in this contention. Apparently this argument is predicated on the basis that the road across appellee's land is appellant's only means of ingress and egress to and from his land. There was evidence that appellant had other access to his property although not as desirable to him. We agree with appellee's answer to this point

where she stated: "His complaint was dismissed for want of equity—not because he had no legal right to institute the action—but because the court found the road had been abandoned as a public way, if it ever was one, and that appellee had the right to close the road."

Appellant further contends that the court erred in requiring the appellant to keep the gate closed at the other end of the road or where the road meets the fence that separates these adjoining lands. On this point we agree with the appellant. In his pleadings appellant asserted that he was the sole owner of this fence. According to the evidence, the appellant constructed on his land a new fence "inside of the old partnership fence." Upon cross-examination the appellee admitted there was a double fence and that the new fence and the gate are upon appellant's land and inside the old boundary-line fence. Even though this be true, it does not preclude the appellee from constructing and maintaining a gate or enclosure upon her property or along their common boundary line.

The decree is reversed and the cause remanded for proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part.