IVAN C. WRIGHT *v.* ARKANSAS STATE HIGHWAY COMMISSION

73-82                                                 499 S.W. 2d 606

Opinion delivered October 1, 1973

*Burris & Berry,* for appellant.

*Thomas B. Keys* and *David P. Saxon,* for appellee.

J. Fred Jones, Justice. This is an appeal by Ivan C. Wright from a mandatory injunction issued by the Chancery Court of Clay County requiring Mr. Wright to effectively screen his junkyard located on Highway No. 1, or in the alternative remove all junk 1,000 feet from the right-of-way of Highway No. 1 under the provisions of Act 640 of 1967, Ark. Stat. Ann. §§ 76-2513—76-2519 (Supp. 1971).

On his appeal to this court Mr. Wright first contends that the chancellor erred in finding that he was operating a junkyard within the meaning of the statute. He next contends that Act 640 of 1967 is unconstitutional as applied to him in that it constitutes a taking of his property without just compensation. He then contends that aesthetic considerations alone are not sufficient for the exercise of the police power of the state in the taking or damaging of property for public use without just compensation.

We find no merit to the first contention and we do not reach Mr. Wright's second and third contentions because they are raised for the first time on this appeal and were not alleged or argued before the chancellor. *Ragge v. Bryan,* 249 Ark. 164, 458 S.W. 2d 403.[1]

Mr. Wright first demurred to the petition filed in chancery court by the Arkansas State Highway Commission and alleged that the petition did not state by what authority the Highway Commission sought to regulate the establishment, use and maintenance, of junkyards; that the petition did not state what lands, if any, he owned abutting on the highway upon which the alleged junkyard was maintained. The petition was amended to supply the deficiency complained of in the demurrer. Mr. Wright filed an additional demurrer to the complaint alleging that the Highway Commission was created under Amendment 42 to the Arkansas Constitution; that the Amendment vested the Highway Commission with all

[1] The appellant's attorney on this appeal did not represent him at the trial.

the powers and duties thereafter imposed by law for the *administration* of the State Highway Department with full power to enable the Commission, its officers and employees to clearly use the laws and regulations of the State Highway Department. He alleged that the petition filed by the Commission was filed under Act 640 of 1967 and seeks to confer on the Commission powers and duties not provided for or authorized under Amendment 42; that the Act seeks to confer on the Highway Commission authority to regulate property not on the highway and property within 1,000 feet of the highway, and that the Commission would have no authority to act outside of the right-of-way along which the highway travels. He then prayed that the petition be dismissed as "being without authority of law." This demurrer was filed on November 19, 1971, and on the same date Mr. Wright filed an answer denying the Commission's authority under existing law to regulate the use, establishment and maintenance of junkyards adjacent to highways; admitting that he owned the property involved but denying that he was operating, or had established, a junkyard on the property within 1,000 feet of the right-of-way of Highway No. 1. On February 29, 1972, the demurrers were overruled and, although Wright reserved the right to rely on the demurrers when he filed his answer, he proceeded to trial on the merits.

At the trial on the issues before the chancellor, Larry Long, an employee of the State Highway Environmental Development Section, testified that he inspected the property involved; that the conditions found on the premises did not comply with Act 640. He said that the property contained junk and dismantled automotive vehicles and was located in the City of Rector at the junction of Highway No. 1 and Arkansas 90, both public highways with Highway No. 1 being a primary highway. Mr. Long was then cross-examined at length as to the general location of the property and whether or not the automobiles could be restored as antique automobiles.

Mr. Wright simply contended, and attempted to prove, that his operation did not come within the definition of a junkyard or automobile graveyard under the Act and was, therefore, not subject to regulations under

the Act. The statutory definition under § 76-2514 reads as follows:

"a. The term 'junk' means ... waste, or junked, dismantled, or wrecked automobiles, or parts thereof. ...
b. The term 'automobile graveyard' shall mean any establishment or place of business which is maintained, used, or operated, for storing, keeping, buying or selling wrecked, scrapped, ruined, or dismantled motor vehicles or motor vehicle parts.
c. The term 'junkyard' shall mean an establishment or place of business which is maintained, used or operated for storing, keeping, or selling junk, or for the maintenance or operation of an automobile graveyard. ... "

Mr. Wright contended at the trial that he was simply conducting an antique automobile business and was storing 175 old automobiles on his property adjacent to the highway so that prospective purchasers could view his display of antique automobiles from the highway. He testified that he has not purchased or sold any automobiles from the premises in 10 years since he ceased operating an automobile salvage business on the premises. He said he still maintains an automobile junkyard on the backside of the lots involved, but that it is screened from view from the highway by a building on the premises. He said that automobiles become antiques when they are 20 years of age; that the automobiles displayed to the traveling public on his premises adjacent to the highway are all more than 20 years of age and becoming more valuable as antiques each day.

Photographs of the automobiles and the premises on which they were located were placed in evidence. From viewing the photographs, the chancellor remarked in his findings as follows:

"I can't see how they could possibly be referred to as antiques until they are operable and restored, they are nothing but old skeletons of automobiles. * * * [T]his is the most incredible testimony I have ever heard as a defense."

We have also examined the photographs and are inclined to agree with the chancellor. From the photographs in evidence some of the old automobiles and trucks appear to be without wheels; some appear to have the doors off, windshields and window glasses out, and some appear to have their wheels buried in the ground halfway to the axle. Even though Mr. Wright testified that he mowed between the automobiles at regular intervals, the pictures clearly indicate that such intervals were a long way apart. In plaintiff's pictorial exhibits No. 4 and 5 appear a sign "Welcome to Rector Business District" and immediately behind this sign is one of the appellant's old automobiles turned up on its side and covered with vines which have grown up over it and another old automobile adjacent to it.

We find it unnecessary to detail the remaining testimony in this case because it had to do with the supply, demand and value of antique automobiles. The picture exhibits in the record simply show a jumbled collection of old automobiles and automobile bodies, and we conclude that the chancellor did not err in finding that the appellant was maintaining a junkyard within the meaning of the statute.

There is no evidence in the entire record as to just compensation or to what extent, and in what manner, Mr. Wright's property would be damaged by removal or screening the automobiles from highway view, except that it would prevent him from displaying the old automobiles to view from the highway. The chancellor's opinion was based in part upon findings recited in the opinion as follows:

"The testimony is these old automobiles were being stored until somebody comes along and maybe buys them. He says he has not sold any for over a period of ten years and I assume he probably likes to collect old automobiles. He is not too anxious to sell them, otherwise he would have turned these over a ten year period of time. I can assume from these pictures here that they are going to cause rats and mice and anything that wants to collect in these old carcasses. That's what I would refer to them as. I can't see how

they could possibly be referred to as antiques until they are operable and restored, they are nothing but old skeletons of automobiles. Under this theory here, if I were to adopt the theory that they are antiques, any junk dealer in the country could say, 'I am saving these for antiques.' Some of the windshields are broken, some of the windows knocked out, some of those in the pictures may not have been in a wreck but they sure hit something that was very steady."

We are unable to say that the chancellor's finding is against the preponderance of the evidence. The decree is affirmed.

Affirmed.