## GILBERT WEIR & LOTTIE WEIR *v.* REVO TRUCKS & SADIE TRUCKS

73-131                                   500 S.W. 2d 923

### Opinion delivered November 13, 1973

*Paul K. Roberts,* for appellants.

*Huey & Vittitow,* for appellees.

J. FRED JONES, Justice. This is an appeal by Gilbert and Lottie Weir from an adverse chancery court decree on a petition they filed against Revo Trucks and Sadie Trucks for the removal of obstructions from a public road.

The appellants, Gilbert and Lottie Weir, are husband and wife and so are the appellees, Revo and Sadie Trucks. For convenience the parties will be referred to hereafter as Weir and Trucks. Weir and Trucks own adjoining properties. The Weir property lies north and east of the Trucks property and the road involved in this litigation runs east and west and then north and south between the two properties. Throughout the record the road is referred to in separate parts as the "East-West road" and the "North-South road." That portion of the East-West road in litigation extends the full east-west width of the Trucks property between it and the Weir property to the north, and the North-South road extends from the northeast corner of the Trucks property south

between the Trucks property and the Weir property lying east of the Trucks property. The Trucks home is in the northwest corner of his property near the west end of the East-West road. There are also two abandoned houses and a barn on the Trucks property south of the East-West road. One of the abandoned houses and the barn were built by Otto Harding who subsequently sold the property to Trucks. The Weir home is located on his property north of the Trucks property and has access to and from the county highway system over Weir's own property and has no connection with the East-West road between the Weir and Trucks properties. Weir contends that he needs access over the road here involved to and from his property lying east of the Trucks property, and that he has a right to such access as a member of the traveling public. Trucks built a wire fence within three or four feet of Weir's fences on the north side of the East-West road and on the west side of the North-South road and this litigation arose when Trucks attached a "Posted, Keep Out" sign on the gate across the west end of the East-West road near his home.

Weir filed the present action against Trucks alleging that a public road had existed between his and Trucks' land for more than fifty years; that Trucks had built fences and gates across the road and he prayed an order for the removal of the obstructions. Trucks denied the allegations and specifically denied that there had been a public road between the lands for more than fifty years.

The chancellor found some evidence that a public road had been established by prescription over the area many years ago but found that its use had been abandoned by the public for more than seven years, and the chancellor dismissed Weir's petition for want of equity. The chancellor set out in some detail his findings from the evidence in this case and from our own examination of the record, we agree with the findings made by the chancellor.

The substance of Mr. and Mrs. Weir's testimony was to the effect that Mrs. Weir's father owned a part of their land many years ago and by mutual agreement about 1915 he and the then owner of the Trucks land set their

fences back 7½ feet from their true common boundary line and established a road between their properties for the use of the general public. They said the general public continued to use the road until Trucks built a fence within two or three feet of their own fence and placed a "Posted, Keep Out" sign on the gate at the west end of the road near Trucks' house.

Otto Harding, the last person besides Trucks who lived on the road, testified that the road had been an old log road but had grown up in bushes and trees when he purchased his ten acres twenty years ago. He said when he told Weir he had purchased the land and intended to build a house on it, Mr. Weir remarked that there was no road to it. He said he purchased the land from Trucks and Trucks agreed to give him all the land necessary for a road. He said he borrowed the money with which to purchase the land and it was necessary to prove to the satisfaction of the lender that a road would be built to the property before the loan was made. He said he cleared out the road from its west end to his house and finally prevailed upon the county judge to pull a ditch on each side of the road. He said the road was used by people coming to his home. Mr. Harding testified that gates were maintained at the west and east end of the East-West road and a gate was maintained and kept locked at the south end of the North-South road. He said he built the gate across the west end of the East-West road about 18 or 19 years ago, and that he maintained two other wire "gaps" across the East-West road adjacent to his property. .

Mr. Weir admitted the existence of gates for many years across the west and east ends of the East-West road and at the south end of the North-South road, and admitted the existence of wire gaps across the road. The gate at the east end of the East-West road was owned and maintained by Weir.

Mr. Trucks testified that many years ago, before Weir purchased the property east of his own, a family lived on that portion of the property at the east end of the East-West road and traveled the East-West road to and from their home. Trucks said he placed the no trespassing

sign on the gate to keep people from dumping trash on his property and he built his fences so close to Weir's fences to retain his bull, which would not jump a double fence. He said he had his property lines surveyed and built his fences within his legal boundary lines. His testimony as to the survey and its accuracy is not controverted. Harding also testified that he had his ten acres surveyed and Weir's fence was on the true division line according to the survey.

There was some evidence that hunters and fishermen visiting local stock ponds still used the road and that on occasion adjacent landowners used it on foot and horseback in visiting their property; but from the overall evidence, if the road involved in this case was ever a *public road*, we agree with the chancellor that it became a public road by prescription and has long since been abandoned by the public as a public road and, that was actually the only question before the chancellor.

A public road may be established by judgment of the county court rendered in accordance with the statute or by voluntary dedication or by prescription. *Craig* v. *Greenwood Dist. of Sebastian County*, 91 Ark. 274, 121 S.W. 280.

In the case of *McLain* v. *Keel*, 135 Ark. 496, 205 S.W. 894, partially relied on by the chancellor in the case at bar, this court said:

"It is well settled that where a highway is used by the public for a period of more than seven years, openly, continuously and adversely, the public acquires an easement by prescription or limitation of which it can not be disposed by the owner of the fee. * * * But it is also equally well settled that the right to a public highway once established by limitation or prescription may be abandoned by non-user, and if so abandoned for a period of more than seven years, the right of the owner of the fee to re-enter and to thereby exclude the public from the use of the highway is restored."

See also *Martin* v. *Bond,* 215 Ark. 146, 219 S.W. 2d 618.

In the case of *Porter* v. *Huff,* 162 Ark. 52, 257 S.W. 393, the facts were much like those in the case at bar, and in that case we said:

> "It is unnecessary to decide whether the public acquired a right to the use of the road as a public road by prescription or seven years adverse possession, for it lost any right it may have acquired by acquiescing in permissive use thereof for a period of more than seven years after the road was closed by gates. When appellee inclosed his land and placed gates across the road, it was notice to the public that thereafter they were passing through the land by permission, and not by right. The undisputed evidence shows that these gates were maintained by appellee across the road for ten or eleven years, without objection on the part of the public."

See also *Pierce* v. *Jones,* 207 Ark. 139, 179 S.W. 2d 454, and *Munn* v. *Rateliff,* 247 Ark. 609, 446 S.W. 2d 664. In *Munn* v. *Rateliff* this court said:

> "The rule is well established that when a gate is maintained for more than 7 years across a road in which the public has a prescriptive easement, then it is deemed that the public has abandoned the road and the landowner has the right to close it permanently and restrict the road to permissive use. *Brooks* v. *Reedy,* 241 Ark. 271, 407 S.W. 2d 378 (1966); *Nelms* v. *Steelhammer,* 225 Ark. 429, 283 S.W. 2d 118 (1955); *Mount* v. *Dillon,* 200 Ark. 153, 138 S.W. 2d 59 (1940); *Porter* v. *Huff,* 162 Ark. 52, 257 S.W. 393 (1924). In these cases we recognized the rule that the installation of the gap or gate was notice to the public that the road was being used by permission and not as a matter of right. It is the existence of the gate and not how continuously it is closed that constitutes notice. In *Brooks* v. *Reedy, supra,* we said: '* * * But it is, we think, clearly established that the gates were in existence at all times from 1952 on, whether up or down.' And further: '* * * It may well be that

those using the roadway did not always put up the gaps; however, be that as it may, the important fact is that the fence and gates were in place for the statutory period, and, under the language in *Mount* v. *Dillon, supra,* the fact that the gates were not always closed does not make any difference.

In the case at bar the chancellor had the opportunity to see and hear the witnesses in evaluating the evidence which was in conflict. In such a situation our rule is that when the evidence is conflicting and evenly poised or nearly so, the judgment of the chancellor on the question of where the preponderance of the evidence lies is considered as persuasive. *Turnage* v. *Matkin,* 227 Ark. 528, 299 S.W. 2d 831 (1957). In view of this well established rule and after a review of the testimony and exhibits presented in the case at bar, we cannot say the findings of the chancellor are against the preponderance of the evidence."

See also *Simpson* v. *State,* 210 Ark. 309, 195 S.W. 2d 545; *Lusby* v. *Herndon,* 235 Ark. 509, 361 S.W. 2d 21.

We agree with the chancellor in the case at bar, that if the public did ever have any right to use the road in question, such right was acquired by prescription and was lost when the public acquiesced for more than seven years to the building and maintenance of the gates and gaps across the road. Following such period of acquiescence by the public without complaint, the traffic over the road became permissive and the owner of the land over which the road runs has the right to close the road to the public.

In addition to the appellants' contention that the chancellor erred in failing to order the roads opened as *public roads,* they now contend on this appeal that the chancellor erred in failing to order the roads opened as *private roads.* This second contention was not before the chancellor at the trial and we are unable to consider assignments of error on contentions raised for the first time on appeal. *Wright* v. *Ark. State Highway Comm'n,* 255 Ark. 158, 499 S.W. 2d 606.

The decree is affirmed.