Rudolph J. HUTTER and Helen Hutter *v.* L. M.
MEDLOCK and Marcelene Medlock

CA 89-151                                    777 S.W.2d 869

Court of Appeals of Arkansas
En Banc
Opinion delivered October 18, 1989

*Stripling & Morgan*, by: *Dan Stripling*, for appellant.

*Joe Cambiano*, for appellee.

GEORGE K. CRACRAFT, Judge. Rudolph and Helen Hutter
appeal from an order of the chancery court of Van Buren County
enjoining appellants from interfering with appellees' free use of a
prescriptive easement over a roadway across appellants' land. It is
not controverted on appeal that a prescriptive easement in the

road existed. The only issue presented is whether the easement had been lost by acquiescence for more than seven years after appellants installed a gate at one end of the road. We find no error and affirm.

Appellant Rudolph Hutter testified that in 1981 he and appellees' predecessor in title, who used the road for access to his property, had a conversation about closing the road. Mr. Hutter offered to spend $3000.00 to provide an alternate route of access. When appellees' predecessor refused, Mr. Hutter consulted his attorney, who "suggested I put up a gate, and said if the gate was up for seven years we [could] close it permanently." He stated that he then put up the gate and placed a "no trespassing" sign at the entrance to the road. He stated that he closed the gate occasionally but "it was open most of the time." He did not lock the gate until shortly before this action was brought.

Appellee L. M. Medlock testified that he acquired his property in 1981, but was familiar with the roadway prior to that as he often visited while his predecessor owned the property. He testified that this was the only road leading into that property. He stated that, although he went in and out of the property with some degree of frequency, he had never seen a gate, open or closed, or a "no trespassing" sign prior to the fall of 1987. In November, 1987, he first discovered the gate, which was closed. In January, 1988, he found the gate locked. Appellees then filed this action to enjoin interference with their use of the road.

Kenneth Ward, appellees' predecessor, testified that he lived on the property now owned by appellees for fifteen years prior to November, 1987. Access to his property was by the roadway in question. He testified that during the time he lived in the area the road was maintained primarily by him. He stated that Mr. Hutter put the gate on the roadway "four, five, or six years ago," but it was not locked or closed and did not obstruct his use of the roadway. Ward stated that he had talked with Mr. Hutter about the use of the road on different occasions and that Hutter "didn't want me to go in, but that was the only way I had to get in. So I went in."

A number of other witnesses offered testimony similar to that of Mr. Ward. Mary Goins testified that she used the road to visit relatives in that area every year, as she had no other access to

the property. She was never interfered with until the spring of 1988, when she found the gate closed and locked. She testified that there had been a gate there for some time, but that she never saw it closed "until this year." Robert Bramlett testified that he had cut timber in that area and hauled logs down the roadway during the latter part of 1986, all of 1987, and early 1988. He said that, although he saw a gate, it was never closed. David Tester testified that he also owned land in the area that gained its access along this road. Although he went to the property only infrequently, he did not recall ever seeing a gate, and no one ever attempted to interfere with his use of the road.

At the close of the case, the chancellor ruled as follows:

> While the court recognizes that the establishment—a construction of a gate is evidence of the assertion of ownership, . . . the fact that the gate was left opened over that period of time brings the Court to believe that Mr. Hutter did not bring to the attention of the prescriptive owners such notice to them that would require them to take some action. . . . By his own testimony, he didn't lock the gate until January of this year. Prior to that time, the gate, as well as I recall the evidence, had been there but it had been open.

The chancellor entered an order finding that appellants had failed to establish notice, actual or constructive, that they were closing the road, and ordered the gate removed and enjoined further interference with the use of the road. Appellants appeal contending that the chancellor's finding is clearly erroneous. We do not agree.

In *Porter* v. *Huff*, 162 Ark. 52, 257 S.W. 392 (1924), the appellee owned lands through which lay what the supreme court assumed, for the purposes of the opinion, to be a public easement. He then built a fence on the line dividing his property and that of neighbors, and placed a gate at the point where the road crossed the dividing line. He also placed two more gates along the road as it passed through his land. For ten or twelve years thereafter, although the appellants and others made use of the road, they were required to open and close the gates, and did so without protest. The supreme court held:

[The public] lost any [prescriptive] right it may have acquired by *acquiescing* in a permissive use thereof for a period of more than seven years after the road was *closed* by gates. When appellee inclosed his land and placed gates *across* the road, it was notice to the public that thereafter they were passing through the land by permission, and not by right. The undisputed evidence shows that these gates were maintained by appellee *across* the road for ten or eleven years, without objection on the part of the public.

*Id.* at 54, 257 S.W. at 392 (emphasis added).

In *Mount* v. *Dillon*, 200 Ark. 153, 138 S.W.2d 59 (1940), a similar situation was before the court. There, a landowner placed wire gates across a road in which the public had acquired a prescriptive easement. The installation and maintenance of the gaps required that people travelling the road open and close the gates when passing through it for over fifteen years. There, although the trial court held that the prescriptive easement had been lost, it further held that "the public should be permitted to travel it as a matter of prescription, and not as a legal right, and that the gaps should be restored, and appellants should permit passage through them." *Mount*, 200 Ark. at 156, 138 S.W.2d at 60. Citing and applying the rules announced in *Porter* v. *Huff, supra*, the supreme court reversed, holding that, when the trial court found that the right to use the road was lost or abandoned, it became the duty of the court to restrain the appellees from cutting the fences and using the road.

In *Brooks* v. *Reedy*, 241 Ark. 271, 407 S.W.2d 378 (1966), the landowner placed gates across a road in which the public had acquired a prescriptive easement. Although the gates remained for a period in excess of seven years, the evidence established that during certain seasons of each year the gates were not closed. The trial court found that:

The gates . . . have not been maintained with such continuity and intent for any definite seven-year period as would destroy the rights of the public to travel and maintain the road. . . . Any interruption of the maintenance of the gates, such as leaving the gates down in the winter so that the cattle could use the open range or the use of the road at a time when the gates were down, would be

such as to make maintenance of the gate for a new period necessary.

*Id.* at 273, 407 S.W.2d at 379 n. 1. The supreme court reversed the trial court's holding that the period of limitations did not run because the gates were "not always up, i.e., closed" in the following language:

It may well be that those using the roadway did not always put up the gaps; however, be that as it may, the important fact is that the fence and gates were in place for the statutory period, and, under the language in *Mount* v. *Dillon, supra*, the fact that the gates were not *always* closed does not make any difference.

*Brooks*, 241 at 277, 407 S.W.2d at 381 (emphasis added).

In subsequent cases where the issues were similar, the court has continuously applied the rule announced in *Brooks* v. *Reedy*; that it is the existence of the gate and obstruction of the passageway, and not how continuously the road is closed, that constitutes the notice. *See Weir* v. *Trucks*, 255 Ark. 494, 500 S.W.2d 923 (1973). From *Mount, Brooks, Weir*, and cases cited therein, it is clear that a prescriptive easement can be lost by a reassertion of dominion by the landowner, manifested by acts of interference sufficiently calculated to bring that assertion home to the public. If the public, during the statutory period thereafter, does not protest or take action to preserve its prescriptive rights, it will be deemed to have submitted to the landowner's reassertion of control, and at the end of the statutory period lose the prescriptive right due to its acquiescence. It is the submission to and failure to protest the acts of interference and dominion, that sets the period of permissive use in motion.

In each of the cases cited above, there was not only the installation of a gate for the purpose of reasserting dominion but a manifestation of that intent by interference with the public's continued use of the road. The interference was sufficient to warrant a finding that the public had been placed on notice of the landowner's intent to reclaim his interest and tolerate only permissive use of the roadway in the future. The failure of the public to protest or take any action to protect its rights was found sufficient to support the conclusion that they had acquiesced in

and submitted to the landowner's assertions, and thereafter used the roadway permissively rather than under claim of right.

Here, on conflicting evidence, the trial court found that, although appellants had installed a gate at the entrance to the roadway, they had not closed it or otherwise interfered with the use of the road until shortly before this action was filed. It found that appellants' actions prior to closing the gate were not such as would bring to the attention of the public such notice of appellants' intent as would require the public to take any action to protect its prescriptive rights. As there was no action taken that would interfere with anyone's use of the road, the public had no reason to protest and no cause of action to assert.

Although we review chancery cases *de novo*, we will not reverse a chancellor's findings unless they are clearly against the preponderance of the evidence, or clearly erroneous. *Carver* v. *Jones*, 28 Ark. App. 288, 773 S.W.2d 842 (1989). From our review of the record, we cannot conclude that the chancellor's finding in this case is clearly erroneous. Nor can we conclude, in light of that finding, that the chancellor erred in holding that the doctrine set forth in the cases discussed above has no application to the facts of this case.

Affirmed.

ROGERS, J., concurs.

COOPER, J., dissents.

JUDITH ROGERS, Judge, concurring. At the conclusion of trial, the chancellor stated that he had decided a similar case a few years ago which was appealed and affirmed by this court, and he was deciding the case at bar the same way. In the earlier case, which we affirmed by unpublished memorandum opinion, the chancellor found that the maintenance of gates on a road for seven years did not terminate the public's right to a prescriptive easement in the road. Although at first blush the two cases appear similar, the case at bar is factually distinguishable from the earlier case that we affirmed, and the chancellor's reliance upon it in this case appears misplaced. Perhaps when the chancellor stated he was relying on the earlier case, he realized that whether the gate is open or closed is not dispositive, but this was not clearly expressed. Therefore, I write this concurrence only to emphasize

to the reader that the closing of the gates is only evidence of intent to establish control.

On trial *de novo* in chancery cases, the decree will be affirmed if it appears to be correct upon the record as a whole, even though the chancellor may have in part or in whole given the wrong reason for his result. *Frawley* v. *Smith*, 3 Ark. App. 74, 79, 622 S.W.2d 194, 197 (1981).

JAMES R. COOPER, Judge, dissenting. I respectfully dissent from the majority decision in this case, as I believe the majority decision here is contrary to the prior holdings of the Arkansas Supreme Court.

The majority here has held in effect that, when a gate is erected and maintained for seven years for the purpose of reasserting the owner's dominion over a roadway, the gate must also sufficiently interfere with the public's use of the roadway so that it brings to the attention of the public such notice of the owner's intent as would require the public to take action to protect its prescriptive right in order to terminate the easement. While I do not argue whether this is the better rule of law, it is not the law followed previously in this state.

The chancellor found that, because the gates in the case at bar were left open, the appellants did not give the appellees sufficient notice that they were terminating the appellees' easement to cause the appellees to take some affirmative action. In *Porter* v. *Huff*, 162 Ark. 52, 54, 257 S.W. 393 (1924), the Supreme Court held that, when the appellee enclosed his land and placed gates across the road, it was notice to the public that, thereafter, they were passing through the land by permission, and not by right, and the public lost any right it may have acquired by acquiescing in a permissive use thereof for a period of more than seven years after the road was closed by the gates.

> The rule is well established that when a gate is maintained for more than 7 years across a road in which the public has a prescriptive easement, then it is deemed that the public has abandoned the road and the landowner has the right to close it permanently and restrict the road to permissive use.

*Munn* v. *Rateliff*, 247 Ark. 609, 613, 446 S.W.2d 664, 667 (1969). Relying on its opinions in *Martin* v. *Terrell*, 229 Ark.

787, 789, 318 S.W.2d 607, 608 (1958), and *Hockersmith* v. *Glidewell*, 153 S.W. 252, 253 (Ark. 1913), the Supreme Court further clarified this rule in *Hoover* v. *Smith*, 248 Ark. 443, 445, 451 S.W.2d 877, 879 (1970), when it stated that "erection and maintenance of a gate by an owner does not give notice that subsequent use of a way across his lands is permissive and not as a matter of right, unless it was maintained as a means of asserting the owner's dominion over the road." *See also Johnston* v. *Verboon*, 269 Ark. 126, 128, 598 S.W.2d 752, 754 (1980); *Wallace* v. *Toliver*, 265 Ark. 816, 580 S.W.2d 939 (1979); *accord Hall* v. *Clayton*, 270 Ark. 626, 606 S.W.2d 102 (Ark. App. 1980). The Supreme Court has further held that it is the existence of the gate and not how continuously it is closed that constitutes notice. *Weir* v. *Trucks*, 255 Ark. 494, 498-99, 500 S.W.2d 923, 926-27 (1973); *Munn*, 247 Ark. at 613, 446 S.W.2d at 667; *Brooks* v. *Reedy*, 241 Ark. 271, 278, 407 S.W.2d 378, 381 (1966); and *Mount* v. *Dillon*, 200 Ark. 153, 156, 138 S.W.2d 59, 60 (1940).

I believe the majority's decision is contrary to the existing case law; therefore, I dissent.