Nelms *v.* Steelhammer.

5-737                                      283 S. W. 2d 118

Opinion delivered October 24, 1955.

*Ivan Williamson* and *Ben Williamson,* for appellant.

*W. J. Arnold,* for appellee.

Minor W. Millwee, Associate Justice. This appeal is from a decree denying the petition of appellant, Joe Nelms, for a permanent injunction to restrain appellees from interfering with appellant's use of a certain road which he claimed had become a public highway by prescription.

Appellees, James E. Grant and wife, purchased 400 acres in Stone County in December, 1949, which included

lands joining appellant's 40-acre tract on the north and east as shown by the following sketch introduced by appellees:

Appellant and his witnesses testified that the roadway shown on the sketch had been used by two or three local landowners and the public generally over a period of 35 to 50 years as an outlet to the village of Rushing and other points on State Highway No. 9. When the Grants purchased their lands in 1949, appellant was living near Gate 4 in a house that was torn down shortly thereafter when he moved to the residence which he built near Gate 1. At one time he had lived in his father's home, which was also located near Gate 1, but this house

was torn down 8 or 10 years prior to the trial. Appellant also lived in Indiana for 1½ years, beginning in 1948. He admitted that the road in question had been moved from time to time and that there were three different roads over the lands. He assisted appellees in building a fence on the north line of his property in 1950 when Gate 1 was put in, but he could not remember the location or date of installation of the other gates.

A good portion of the lands in question had been open and unenclosed for long periods prior to 1949. However, small portions of the land had been cultivated at different times. John Moore, appellees' predecessor in title, was cultivating a small acreage and maintaining Gates 2 and 3 in 1950. A witness for appellees testified that these were old gates when he first noticed them about 7 years prior to the trial and there was other evidence that the gates had been in existence and use for 8 or 10 years in 1950 when appellees completely fenced their lands as a stock farm and installed Gates 1 and 4. Gates 1, 3 and 4 were necessary to keep livestock off the outside range and Gate 2 was used to protect a cultivated field which was separated from the pasture lands.

In 1952, Mrs. Grant closed Gate 1 because the gates were continually being left open and torn down. A suit then filed by appellant was dismissed under an arrangement whereby appellees installed cattle guards at Gates 2 and 3, which proved inadequate or unsatisfactory, and the gates were restored. When someone, identified by Mrs. Grant as the appellant, persisted in leaving open and tearing down the gates, Mrs. Grant again closed Gate 1 by locking it and the instant suit was filed.

Evidence introduced by both sides tended to show that the portion of the road from Gate 1 to Gate 2 had not been used for a period estimated at 8 to 12 years prior to 1949. Mrs. Grant was positive that there was no road there in 1949 nor any visible evidence that a road had ever been there. Much of the road traversed lands which were unenclosed and unoccupied for a considerable portion of the time in which adverse use was claimed. The land in the vicinity of Gates 1 and 4 was first fenced

in 1950 and the land between Gates 2 and 3 was allowed to "lay out" much of the time. Different ways were used over the lands at different times. Evidence offered by appellant in an effort to show that the road extending west from his house near Gate 1 was inadequate for vehicular travel was first admitted, but appellees' offer to show that said road furnished an adequate outlet to the highway without crossing their property was rejected on the ground that it was immaterial to the issue involved.

The rule applicable to the establishment of a public highway by prescription over private lands was announced in *Howard* v. *State,* 47 Ark. 431, 2 S. W. 331, where this court held: "A road becomes established as a public highway by prescription, where the public, with the knowledge of the owner of the soil, has claimed and continuously exercised the right of using it for a public highway for the period of seven years, unless it was so used by leave, favor or mistake; and this though the public travel may have somewhere slightly deviated from the original track by reason of any obstacle that may have been placed in it." Another well-settled rule is that where a road is used by the public across unoccupied and unenclosed lands, such use is presumed to be permissive. *Brumley* v. *State,* 83 Ark. 236, 103 S. W. 615. We have also held that if the public acquiesces for more than seven years in the existence of a gate across a road established by prescription, its conduct amounts to an abandonment of the prescriptive right, entitling the owner to close the gate permanently. *Porter* v. *Huff,* 162 Ark. 52, 257 S. W. 393; *Kennedy* v. *Crouse,* 214 Ark. 830, 218 S. W. 2d 375.

In denying the prayer for a permanent injunction, the chancellor pointed out the changing routes of the road over the years and the fact that much of the land was open and unenclosed while part of it was fenced with gates across the road. There was a finding that the evidence was insufficient to establish a public way by prescription because the use of the road over the years was permissive and not adverse. We cannot say this

finding is against the preponderance of the evidence. Even if it be held that a public highway was at one time established by prescription, the evidence also tends to show that appellant, and the public generally, acquiesced in the use of Gates 2 and 3 for a period of 8 to 10 years prior to 1950, thereby losing any prescriptive right previously acquired. The facts here are similar to those in *Porter* v. *Huff, supra,* where the court said: "When appellee enclosed his land and placed gates across the road, it was notice to the public that thereafter they were passing through the land by permission, and not by right."

Affirmed.