CRAIG v. O'BRYAN.

5-1189                                    301 S. W. 2d 18

Opinion delivered April 15, 1957.

[Rehearing denied May 13, 1957]

*Sherrill, Gentry & Bonner,* for appellant.

*Talley & Owen, Dale Price* and *William L. Blair,* for appellee.

CARLETON HARRIS, Chief Justice. Appellees filed their complaint stating that they were owners of property on the north side of Old River Lake adjoining ·the property of the appellants, and alleging that a road leading through appellants' property to that owned by appellees was a way of necessity to appellees; that said road was a public road, and that the roadway had been adversely used by appellees and the general public for a period of forty years. They further alleged that appellants were damaging the road and drainage ditches by using said road to turn their tractors, cultivators and plows, and by refusing to permit appellees to maintain the road. It was further alleged that appellants were estopped to deny appellees access to use of the road because they had stood by, knowing that appellees were investing thousands of dollars in improving their property, and knowing that their only access to same was over the road in controversy. Appellants filed answer and cross complaint admitting that the roadway in question crossed a portion of their lands and had been used by

appellees from time to time. They denied the adverse use by appellees and the general public, and stated that any use of the roadway upon their lands was permissive only. The pleading further set out that appellants and their predecessors in title had habitually used said roadway for the hauling, dragging, and transportation of all kinds of heavy farm equipment; that they habitually used the road as a turnrow for cultivating and harvesting equipment, and that in order to use said road in this manner, it was necessary that the area between appellants' cultivated fields and the roadway be free of ditches in order to permit the equipment to pass over and onto the road; that such acts had been under a claim of right and adverse to any rights or easements claimed by appellees. Appellants further alleged that appellees had caused to be constructed, ditches along the roadway which had trapped and accumulated water from appellants' integrated draining system, had caused the water to flood portions of appellants' fields at planting time, and that such flooding would continue unless appellees were enjoined from maintaining such ditches along the roadway. Appellees denied the allegations of the cross complaint and subsequent thereto, the cause proceeded to trial. On May 16, 1956, the court entered its decree, in which it found that the road in question was a public road by reason of the adverse use of the general public and appellees for a period greater than seven years. The court further found that appellants were estopped to deny appellees the use of said road, or to deny them the right to maintain the road. In conformity with said findings, the court entered its order dismissing the cross complaint of appellants, and making permanent a temporary injunction (which had been granted on July 15, 1955) restraining appellants from damaging the road, from interfering with the use and maintenance of same, and declaring it to be a public road. From such decree comes this appeal.

In reviewing the testimony of appellees' witnesses, we do not feel that the evidence establishes the roadway in question to be a public road. The people testifying (Linda Biggs, Ione Black, Sherman Abraham, Lillie

Garrett) as to this being a public road, had lived in the area at one time and traveled the road to reach their homes. Tenants on the farms, and people visiting both the owners and tenants, used the road. None of these witnesses (except Sherman Abraham) testified as to personal knowledge of seven years consecutive use by the general public. Abraham's testimony was to the effect that he saw people traveling the road who did not live in the area—"going in there to fish and different things." He testified that he had been familiar with the road for 25 or 30 years and formerly lived down on Old River, but it is not made known as to the particular years his testimony covers, or that he had occasion to observe daily the use of the road for a consecutive number of years. Certainly we cannot find that his testimony establishes same to be a public road. Joe Price, a county employee, testified that the road had been worked occasionally by the county since 1935, but he did not know whether this was done because of the requests of property owners. The evidence does not reflect any order of the county court establishing this as a public road, and the mere fact that the roadway was occasionally worked by the county would not, of course, make it a county road. The rest of the testimony on behalf of appellees as to use of the road came from appellees themselves.

To establish their easement by prescription, it is necessary that appellees establish their use of the roadway for more than seven consecutive years, under a claim of right, adverse, and hostile to appellants. Quoting from Vol. 14, page 98, of Words and Phrases: "Easement by prescription may be created only by adverse use of privilege with knowledge of person against whom easement is claimed, or by use so open, notorious, and uninterrupted, that knowledge will be presumed, and exercised under claim of right adverse to owner and acquiesced in by him." Several of the appellees testified that they talked with Craig about whether they had a right to use the road, and the majority have not owned their respective properties for a sufficient period of time to establish adverse rights.

Under the evidence, it would seem that this road "started out" as a turnrow, and has been used in connection with general farming operations on the Craig farm by appellants and their predecessors in title for a long number of years. Alfred Craig, Jr., testified that he had so used the road for 21 years. This is not disputed; there is no claim by appellees that appellants have been deprived of the use of the road, nor can we find any testimony in the record which would tend to show the commission of acts by appellees that would serve as notice to appellants they were claiming adversely. The fact that they finally did commit such acts which were hostile to the purpose for which appellants used the road, and to which they strenuously objected, occasioned this litigation.[1] These seem to have been the first instances in which appellees asserted rights contrary and hostile to those of appellants and such acts occurred a comparatively short time before the filing of the lawsuit. In short, the prior use of the road by appellees had not been inconsistent with the use of same by appellants. One might well make the observation that if appellees felt they had an absolute right to the use of the road, there was no reason for any of them to talk with Craig about the matter at all. In *LeCroy* v. *Sigman,* 209 Ark. 469, 191 S. W. 2d 461, American Jurisprudence is quoted as follows: "The prevailing principle seems to be that while a way may be acquired by user or prescription by one person over the uninclosed land of another, mere use of the way for the required time is not, as a general rule, sufficient to give rise to the presumption of a grant. Hence, generally some circumstance or act, in addition to, or in connection with, the use of the way, tending to indicate that the use of the way was not merely permissive, is required to establish a right by prescription." Viewing the evidence and the circumstances in their entirety, we conclude that appellees have failed to establish their right to use of the road by prescription, and that such use has been permissive only.

---

[1] Appellees had constructed drainage ditches and placed gravel upon the road, and appellants filled up the ditches.

The court further found that a p p e l l a n t s were estopped to prevent appellees from using and maintaining the road, because of statements of appellant Alfred Craig, Sr., made prior to appellees' purchase of properties on Old River, to the effect that they could use same. The evidence shows that Craig made such statements to several of the appellees and knowingly suffered the others to purchase and expend money on their properties.[2] We think the Chancellor was correct in holding that appellants are estopped to deny appellees use of the road. We are also of the opinion that they have the right to maintain said road so long as the manner of maintenance does not place an additional burden upon the servient estate. Actually, it may well be immaterial whether the right of appellees was acquired by prescription or permission. Quoting from Thompson on Real Property, Vol. 2, Sec. 681, page 352: "Where a right is acquired by use or prescription, the nature of the use cannot be changed so as to render it more burdensome upon the servient tenement." From A. L. R., Vol. 112, page 1303: "It is a general rule that the owner of an easement of way may prepare, maintain, improve or repair the way in a manner and to an extent reasonably calculated to promote the purposes for which it was created or acquired, *causing neither an undue burden upon the servient estate nor an unwarranted interference with the rights of common owners or the independent rights of others.*" (emphasis supplied). In *Doan* v. *Allgood*, (1923) 310 Ill. 381, 141 N. E. 779, the court said: "Whoever has an easement in or over the land of another has the right to do everything necessary to preserve the easement, and the right to repair a way is fully established . . . The question of what acts of repair are reasonable in the use and enjoyment of an easement is one of fact in each particular case, and depends on the extent and character of the lawful use of the easement. The owner of the easement may make such grades or fills and lay such tiles or construct such ditches as may be necessary to enable him to make use of the way

---

[2] Actually, the right of appellees to merely travel the road does not seem to be in dispute. Their right to maintain same is the pertinent issue.

in accordance with the grant, provided in doing so he does not injure the servient estate. He may not construct a grade or fill a ditch in such a manner as to affect injuriously the adjoining land of the servient estate." From Am. Jur., Vol. 17, Sec. 112, page 1006: "As a general rule, when the character of an easement is once fixed, no material alterations can be made in physical conditions which are essential to the proper enjoyment of the easement except by agreement."

At the time appellees acquired this easement by permission of Craig, the road in question was not graveled, nor were ditches existing to provide drainage of the road. There were "bad spots", almost impassable in winter, at that time. Appellees complain that the road has become much worse and more difficult to travel in the last two years; this would seem logical, since there is apparently much more motor traffic over the road than in the past. Appellees do have a right to maintain such road, but only to the extent that acts of maintenance do not render same useless for purposes of appellants. They may grade the road or gravel any bad spots. They may even dig ditches, if such are constructed in a manner as will not interfere with appellants' use of the road as a turnrow, or cause the fields to be flooded.

While appellees do not argue the point, the record is replete with references to the fact that appellees have no other way to reach their properties except by use of this road. It is well settled that a "Way of necessity" only arises where the lands of all parties were at one time owned by a common grantor. *Boullioun* v. *Constantine,* 186 Ark. 625, 54 S. W. 2d 986; *Mettetal* v. *Stane,* 216 Ark. 836, 227 S. W. 2d 636. There is no evidence that such is true in the instant litigation.

It would appear that there is no reason why appellants and appellees should not both enjoy the use of this road. Appellants should operate their machinery, while using the road, in a manner that will limit any damage to that which must necessarily come from the mere use of the road, and consistent with the rights of appellees to their use of the roadway. The parties may

well agree on the stretches to be graveled, and take proper steps for drainage that would not prove injurious to either. An amiable and cooperative attitude on the part of all concerned should result in a satisfactory and harmonious solution.

The decree is therefore modified to the following extent. The finding that the road is a public road is held erroneous. The injunction restraining appellants from damaging the road and interfering with the use and maintenance of same by appellees is upheld, though modified to the extent as to apply only to unnecessary damage, and the term "maintenance" is modified as herein indicated.

The case is remanded to the trial court for any further orders which may be necessary to insure the rights of the parties as have been set out.

Justice WARD dissents.

PAUL WARD, Associate Justice (dissenting). I do not agree with the majority opinion in the following particulars:

*One.* The chancellor held that appellees had acquired a road by prescription. I would affirm that holding. Where the public uses a road across unoccupied and unenclosed land, there is a presumption the usage was permissive. See *Nelms v. Steelhammer,* 225 Ark. 429, 283 S. W. 2d 118. There is a good reason for such a presumption, because the owner of the land might not know of the usage. Such presumption does not arise where the land is occupied or cultivated, as here. The majority, in reversing the chancellor on this point, feel that no continuous usage for seven consecutive years was shown by the testimony. But as I view the testimony, the chancellor was justified in finding that the public, and appellees in particular, had used the road continuously for more than 50 years. Since the undisputed proof shows that appellees had no other road to and from their farms, and since appellants themselves admit the road has been in use for some 30 years, it would be preposterous to pre-

sume that the road was not used for a period of seven consecutive years. Joe Price, employed by the Pulaski County Road and Bridge Department, testified that he had been familiar with the road since 1935 and that the County had been working the road occasionally since that time. Sherman Abraham had been familiar with the road for 25 years, and knew the general public used it. Lillie Garrett knew the road was old in 1930 and that the general public used it. Witness Dortch stated that the road had been in existence within a few feet of where it is now for a period of at least 50 years. One of the appellants testified that the road had been there for 100 years. It seems to me that the above testimony (and there is much more) is ample to sustain the chancellor's finding on the period of usage. This is especially true since there is no testimony that there was any 7 year gap in the usage. If appellants thought there was any such gap they should have brought it out on cross examination or by direct testimony.

Under the above factual situation, it is my considered opinion that the trial judge in this case correctly followed the rule laid down by this court in the case of *Fullenwider* v. *Kitchens,* 223 Ark. 442, 266 S. W. 2d 281, 46 A. L. R. 2d 1135, where, in dealing with a similar state of facts, we said: ". . . the road has been used by appellee and the public openly and adversely for more than 7 years and (that) the constant usage of said road for some 40 years under the circumstances of this case overcomes the presumption that said usage was permissive." In the cited case the road was over unenclosed land and therefore the presumption of permissive use attached, but in the case under consideration of course no such presumption attached. See also *Stoker* v. *Gross,* 216 Ark. 939, 228 S. W. 2d 638.

*Two.* In my opinion the majority have announced the wrong rule by which appellants and appellees must hereafter settle their differences. As I understand the majority opinion it lays down this rule: Appellees can maintain the road as long as they do not

increase the burden on appellants. It is not necessary to enter into a discussion of what constitutes a "burden", because I am concerned here only with a rule or principle.

The rule which I think this court should apply, and which I think is approved by the decisions cited by the majority, can be stated, in effect, as follows: Appellees have a right to make such repairs, and only such repairs, on the road as are reasonably necessary to insure its use. In other words I would make the *use* of the road, and not the *burden on appellants,* the criterion. The difference in the two rules may seem slight, but I think it is fundamental, and that it could lead to quite different results. For example: If digging a one foot side ditch along a portion of the road was found to be necessary in order to make the road usable, it would not be allowed, under the majority rule, if it was found to be an extra burden on appellants. This could, in effect, deny appellees the use of the road entirely.