HAL MILLSAP JR AND FRANCES AILEEN MILLSAP v. UNITED TELEPHONE COMPANY OF ARKANSAS

5-5990                                          482 S.W. 2d 813

Opinion delivered July 24, 1972

*Warren & Bullion,* for appellants.

*Russell Elrod,* for appellee.

J. FRED JONES Justice. This is an appeal by Hal Millsap, Jr. and Frances Millsap, his wife, from a decree of the Benton County Chancery Court wherein, upon petition of United Telephone Company of Arkansas, the Millsaps were restrained and enjoined from interfering with the construction of a telephone line along the right-of-way of North Dogwood Street in the City of Siloam Springs, Arkansas, and the counter petition of the Millsaps for damages was dismissed.

Mr. and Mrs. Millsap have designated four points upon which they rely for reversal, but as we view this case the real question before the chancellor was whether the telephone line was being erected inside or outside the right-of-way boundary of Dogwood Street, and the real question before us on appeal is whether the chancellor's finding and decree that the area involved is inside the street right-of-way are against the preponderance of the evidence.

It appears from the record before us that Dogwood Street was originally a public road running north and south and had been so used and considered for many years. The westernmost city limits of Siloam Springs extend to the center of Dogwood Street, but the area involved has never been platted into city blocks and lots. Mr. and Mrs. Millsap purchased property on the east side of Dogwood Street and took title by separate warranty deeds dated January 26, and February 8, 1965, under descriptions as follows:

"S½ of NW¼ of NE¼ of SE¼ of Sec. 36, Twp. 18 N., Rge. 34W, containing 5 acres, more or less."

"Part of N½ of NW¼ of NE¼ of SE¼ of Sec. 36, Twp. 18 N. Rge. 34 W., described as beginning at the Southwest corner of the tract, thence north 66 feet, thence east 660 feet, thence South 66 feet, thence west 660 feet to the point of beginning containing 1 acre more or less."

Mr. and Mrs. Millsap had an abstract of title to the property examined by their attorney and by letter dated January 29, 1965, the attorney advised as follows:

"You should further satisfy yourself as to the boundary lines of said lands, and as to the rights of any person who may be in possession of any part of said lands other than the above named record owners.

If located in the city limits, then the lands would be subject to zoning ordinances of the City of Siloam Springs, Arkansas, which are not covered by the abstract of title."

On February 6, 1965, Mr. and Mrs. Millsap had their property surveyed by a professional civil engineer. The engineer prepared and furnished to the Millsaps a plat of his survey showing a 60 foot right-of-way for North Dogwood Street with the Millsaps' true west property line designated as 30 feet from the center of Dogwood Street. The plat, as certified by the surveyor on February 6, 1965, after describing the land surveyed, states:

"Containing 5.73 acres more or less. (Note: 6.00 acres less 30.0 feet along west side for one-half of street right-of-way)."

A copy of this plat was placed of record in the office of the circuit clerk and recorder of Benton County on July 8, 1965, but no one seems to know who filed the plat for record. As above stated, the engineer who prepared the plat certified thereon that the survey was made on Feb-

ruary 6, 1965, so it would appear that at the time the Millsaps purchased their property they were advised by their attorney to satisfy themselves as to the boundary lines of the property, and they were advised by their surveyor or engineer that the total of six acres more or less as described in their deeds was actually 5.73 acres more or less because of the 30 feet off the west side of the property for one-half of the 60 foot right-of-way for North Dogwood Street.

The appellee telephone company pays an annual fee to the City of Siloam Springs for the privilege of erecting and maintaining its telephone lines on the street rights-of-way in the city. The litigation in this case arose when the telephone company started erecting its telephone line along the east side of North Dogwood Street and started cutting trees and brush claimed by the Millsaps as belonging to them. Mr. Millsap demanded that the telephone company remove its poles and equipment from the area involved, whereupon the company obtained a temporary restraining order against the Millsaps. In response to the company's petition for the permanent restraining order and injunction, Mr. and Mrs. Millsap filed an answer and cross complaint denying the company's right to construct its telephone line on the area involved, and prayed treble damages for wrongful destruction of the trees along the right-of-way.

There is considerable testimony in the record as to permission requested by the telephone company and granted or refused by the Millsaps for the cutting of the brush and trees along the right-of-way. Witnesses for the telephone company testified that as a matter of courtesy their contractor pointed out to Mrs. Millsap the trees that would have to be cut, and that Mrs. Millsap agreed to the cutting of the trees without the necessity of talking with Mr. Millsap. Mr. and Mrs. Millsap denied that either of them agreed to the cutting of the trees and there is no evidence or contention that Mr. Millsap himself ever personally agreed to the cutting of the trees. The evidence is to the effect that when Mr. Millsap learned where the telephone company proposed to erect its line, he requested

a conference with the company officials before proceeding with the erection of the line, but that the company completed clearing its right-of-way before the matter was ever discussed with him. The record indicates that when Mr. Millsap found that the right-of-way had been cleared, he demanded that the company remove its poles and equipment from the property, whereupon the company obtained the restraining order above referred to.

Several photographs of the area involved were introduced by both sides and after hearing the evidence the chancellor viewed the property. We are of the opinion that the chancellor's finding "that the telephone poles and lines of the plaintiff are within the boundaries of North Dogwood Street, Siloam Springs, Arkansas," is not against the preponderance of the evidence, so we find it unnecessary to discuss the testimony of the various witnesses concerning the elements of damage and value of the trees as well as the various discussions the parties had with each other.

It is quite clear from the evidence of record that a public right-of-way over North Dogwood Street has been well established by constant public use for many years. The only question in connection with the right-of-way easement is the width of it.

The appellants cite our decisions in *Craig* v. *O'Bryan*, 227 Ark. 681, 301 S.W. 2d 18 and *Southwestern Bell Telephone Co.* v. *Davis*, 247 Ark. 381, 445 S.W. 2d 505, as calling for a reversal in this case, but the *O'Bryan* and the *Davis* cases are distinguishable on their facts from the case at bar. In *O'Bryan* the controversy was between two individuals over the use and maintenance of the traveled portion of a roadway, and the width of a right-of-way, or right-of-way easement was not involved.

In *Davis* a 12 foot public road had been widened to 24 feet and a county employee was injured when a road grader he was operating struck an obstruction (a baffle) placed by the telephone company on its easement. In a personal injury suit filed against the telephone company,

the company defended on the ground that the injured county employee was trespassing on the telephone company's easement and we agreed with the telephone company.

The primary distinction between the Davis case and the case at bar was stated in *Davis* in the following language:

"The width of the public road before or after enlargement, viewed most favorably to the appellee, never extended closer than 4.4 feet to the baffle on appellant's property or easement."

In neither *O'Bryan* or *Davis* were there fences or other monuments marking or indicating an acceptance of a specific easement boundary line as is the situation in the case at bar.

In 39 C. J. S., § 20, in connection with width and extent of highways generally, is found the following:

"An important element in determining the width of a highway by prescription is the recognition of the limits of the way by persons whose lands front thereon, as indicated by the monuments and fences which they themselves place upon the ground, and the lines which they fix for the same in making conveyances of their property."

In 39 Am. Jur. 2d, § 52, Highways, Streets, and Bridges is found the following:

"Ditches along the side of a highway acquired by prescription or user are generally regarded as within the boundaries of the highway. Fences, walls, or other monuments erected along the sides of such a highway by the adjoing owners are frequently regarded as determining its boundaries, in some instances the courts pointing out that the owners had recognized and accepted the fence, wall, or other monument as marking the boundary."

In the case at bar the testimony indicates, and exhibits confirm, that the telephone poles erected, and to be erected, are within a few feet of the traveled surface of the street and several feet distant from the fee simple property line as designated on the surveyor's plat furnished to Mr. and Mrs. Millsap. It is rather clear from the evidence of record that the property north and south of the Millsap property is owned by separate individuals who have enclosed their property under fence and their fences if extended along the Millsap property, would coincide with the surveyor's plat and confirm the 30 foot right-of-way from the center of the traveled portion of North Dogwood Street. The area from which the trees have been cut and along which the telephone company proposes to erect its line is described in the testimony as a bank or elevated area along the east side of north Dogwood Street, and the defendant's picture exhibits bear this out. There is no testimony as to how this elevated area originated, but it is not difficult to conclude that it originated from the deposit of dirt and rocks removed from the traveled surface of North Dogwood Street through the many years of maintenance. The logic of such assumption is rather dramatically borne out by defendant's picture exhibits Nos. 3, 4, 6, 7 and 8 because it is obvious from these exhibits that the timber had once been cleared from this area and permitted to grow up again from the stumps or stools which were not removed. This is especially clear from the defendant's picture exhibits Nos. 6 and 7 where the multiple growth has been severed from single stumps and these stumps may be easily compared with the single tree growth further east on the Millsaps' property where there is no evidence that the land has ever been cleared.

In addition to the evident fact that the trees had at one time been cut from the area involved in this case, there is no question that Mr. and Mrs. Millsap were fully advised, by their surveyor when they acquired their land, that a 30 foot right-of-way was being claimed east of the center line of North Dogwood Street. It is admitted by all parties concerned that the land involved in this case is inside the city limits of Siloam Springs and it therefore follows that at least the east half of North Dogwood Street

is a city street as distinguished from its original status as a country road.

In *Padgett* v. *Ark. Power & Light Co.,* 226 Ark. 409, 290 S. W. 2d 426, we said:

"There is a generally recognized distinction between a highway in the country and a street in a municipality, as to the mode and extent of the use and enjoyment, and, consequently, as to the extent of the servitude in the land upon which they are located, the urban servitude being much more comprehensive than the rural. Streets within the limits of municipal corporations are subject to many uses by the public to which highways in the country are not subject. Moreover, as a village grows into a town and the town grows into a city, the rights of the public in its streets are correspondingly broadened. As a rule, country highways are needed only for the purpose of passing and repassing, and, subject to some exceptions, the rights of the public and of the authorities in charge are confined to the use of the surface, with such rights incidental thereto as are essential to such use. Streets, however, may be used for many purposes other than travel, such as construction of sewers and drains, the laying of gas and water pipes, the erection of telegraph, telephone and electrical power lines, and a variety of other improvements, beneath, upon, and above the surface, to which in modern times they have been subjected."

We find that the chancellor's decree is not against the preponderance of the evidence in this case, so the decree is affirmed.

Affirmed.