## Levi WHITE *v.* COUNTY OF FAULKNER and Gerald WARD

80-69                                          601 S.W. 2d 827

Supreme Court of Arkansas
Opinion delivered June 23, 1980

*Henry & Graddy,* by: *Larry E. Graddy,* for appellant.

*Brazil & Roberts,* for appellees.

FRANK HOLT, Justice. The appellee county and appellee Gerald Ward, County Judge, brought this action to enjoin the appellant from interfering with the county's maintenance of a road which traversed his property. The appellees asserted that the roadway was a public one (county road No. 495), and the county was entitled to access for the purpose of maintaining it. The appellant responded with a counterclaim for an injunction against appellees, asserting that the roadway was private, and sought to recover for damages to his property. The chancellor held the road to be a county road, granted appellees' injunction, ordered the county to maintain the cattle guards at each end of the road and awarded $500 damages to appellant. We affirm as modified.

Appellant correctly asserts that the county must establish adverse use by the public under a claim of right for a continuous period of not less than seven years. *Craig* v. *O'Bryan,* 227 Ark. 681, 301 S.W. 2d 18 (1957); and *Fullenwider* v. *Kitchens,* 233 Ark. 442, 266 S.W. 2d 281 (1952). Here it is argued that the county has failed to do so.

Appellee Ward, County Judge since 1977, testified that

the road has been maintained by the county since the 1960's, and he has continued to maintain it until appellant interfered with the maintenance. Although the road never has been dedicated or acquired by eminent domain, it is considered as being in the county system and has never been abandoned. The state assigned No. 495 to the road. He graded the road from 1963 through 1966 when he was a county employee. The appellant had tried to persuade him to take into the county road system an alternate road along a section line or around his property. Although under present law he has authority to accept the alternate road in the county system, he could not do this until certain specifications as to gravel and width were met as required by county ordinance. Cattle guards at each end of the road in question had kept appellant's cattle contained since 1960. The superintendent of local school testified that the road had been used by the school bus for the past 11 years. When the bus couldn't travel this road, it then used the alternate road. Another witness testified that during the last 12 years the school bus had used the road in question and the mailman had used it until recently. Further, the road was known as the "main artery" through the area. The county superintendent of roads for the past 2 years testified that the road was considered a county road. It was 30' to 35' wide. Another witness testified that when she purchased property from appellant 2 years previously he told her the road had been in existence 100 years, and the county maintained the road and cattle guards. She was led to believe by the appellant that it was a county road. Her family and people in the area have used the road continuously.

The appellant responded that his problems started in the early 1970's when some of his cattle were killed by cars, and he made the mistake of asking the county to grade the road; the use of the road by the public, the school bus, and the mailman was permissive; and the cattle guards at each end of the road, in existence for many years, replaced the use of gates. On cross-examination he testified that the only way people could get through was by use of the road in question, and the traffic was getting bad; everyone had to use this road, including the mailman and the school bus; the county graded the road and "let" him "maintain a speed dip in the mid-

dle of it;" the former county judge had agreed to "open up" and maintain an alternate road around appellant's property provided appellant would assist by paying for the dozer work; appellant spent about $1,500 to accomplish his part of the agreement; the purpose of improving the alternate road was to divert public travel from the road in question to the alternate one and, thus, protect his property and cattle; the present county judge worked on the alternate road for about a year, then got mad at him and decided to give him problems; the cattle guards were 14' in width and parts of the one-lane road were only 20' in width; and it was a crooked wagon road which was gradually straightened through the years. On appellant's behalf, a witness testified that the road was an ordinary wagon road and not the main one in the area. Appellant's neighbor testified that the road was only 20' in width, and the present and preceding county judges had agreed to assist him and appellant in opening and maintaining an alternate road for the public. In response, the county judge, who served from 1971 to 1976, testified that he told the appellant he would "blade" the alternate road if appellant would "doze it off;" however, he did not agree to take it into the county road system. He grew up in the community, and the road in question has always been the "main road" in that area. It was about 30' in width and maintained by the county. The cattle guards were paid for, installed and maintained by the county.

We first observe that we disagree with appellant's argument that maintenance of 14' wide cattle guards at each end of his property constitutes sufficient notice to the public that use of the road was permissive. He cites *Brooks* v. *Reedy,* 241 Ark. 271, 407 S.W. 2d 378 (1966). However, the facts there are not analogous to the facts here since the barriers or obstructions in *Brooks* were wire gates crossing the road at three points. The gates, unlike the appellant's cattle guards, could have been latched to obstruct any entry by the public. The cattle guards merely contain the cattle. They do not restrict public use of the road at any time. Further, there was evidence that the county paid for, installed and maintained the cattle guards.

We agree with the chancellor that the evidence clearly

demonstrates adverse use by the public under a claim of right for a continuous period of more than seven years. Therefore, the court was correct in holding the road to be a public road and in granting the appellees' injunction.

The appellant next contends that the chancellor erred in holding there had not been a trespass by the county on his property bordering the road or right-of-way. According to the appellant, the road was approximately 20' wide, and the trees destroyed were some 12' to 15' from the edge of the road. However, appellees adduced evidence that the road was 30' to 35' in width. The chancellor found the roadway was 30' wide, "not including ditches", and awarded $500 to appellant for expenses in cleaning up the debris left outside the roadway or on his property by the county. We cannot say that the chancellor's finding as to damages for trespass is against the preponderance of the evidence. However, the evidence does not justify a finding that "ditches", undefined, should be in addition to the width of the 30' road. Therefore, the chancellor's order is modified to that extent.

Neither can we say the chancellor's finding, which disallowed appellant's claim for money expended by him on an alternate road in reliance upon an agreement with the county, is against the preponderance of the evidence since the evidence as to the existence of the asserted contract was also in sharp conflict.

Affirmed as modified.