Alvin DWIGGINS *v.* PROPST HELICOPTERS, INC.,
Arkansas Power & Light, and The Dow Chemical Company

91-303                                    832 S.W.2d 840

Supreme Court of Arkansas
Opinion delivered June 29, 1992

*Wilson, Engstrom, Corum & Dudley*, by: *Timothy O. Dudley*, for appellant.

*McMillan, Turner & McCorkle*, for appellee Arkansas Power & Light.

*Wright, Chaney, Berry & Daniel*, for appellee Propst Helicopters, Inc.

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for appellee Dow Chemical Co.

ROBERT H. DUDLEY, Justice. Alvin Dwiggins, the plaintiff and appellant, filed suit against Propst Helicopters, Inc., Arkansas Power & Light Co., and Dow Chemical Company. He alleged that on July 24, 1988, defendant Propst Helicopters sprayed mixtures of the herbicides Tordon-K and Garlon-4 on an easement for twin power lines that A.P. & L. has across his farm. He alleged that A.P. & L hired Propst to make the aerial application of these herbicides, that Dow Chemical manufactured them, and that as a result of an inadequate warning by Dow Chemical and of the negligent application by Propst and A.P. & L., he suffered damages. Specifically, he alleged a peach orchard which adjoins the right-of-way was damaged, a nearby pond used for the irrigation of his tomato crop was contaminated and, as a result, he was forced to discontinue watering his tomato crop and it subsequently died, and his pasture under the power line was damaged. He alleged that he owned all of the land on which the damage occurred. Defendant Dow Chemical answered and denied that he owned the land, while defendants Propst and A.P. & L. admitted that he owned it. In his deposition, taken November 25, 1989, the plaintiff testified the part of the peach orchard that suffered the damage was not owned by him, but rather by his father. He leased the land from his father under a written lease for one year, but the two had an oral agreement by

which plaintiff could continue to lease the land for as long as he wanted. On May 13, 1991, Dow moved for summary judgment and argued that the plaintiff was unable to show that the herbicides had caused any damage. The trial court ruled that there were issues of fact to be decided and denied the motion. On June 24, 1991, Propst and A.P.& L. filed a joint motion for summary judgment in which they alleged that the plaintiff was unable to show that his crops were damaged as a result of spraying the herbicides. Dow filed a motion for reconsideration of its previous comparable motion. The plaintiff filed a response asking that summary judgment be denied.

On July 26, 1991, three years and two days after the cause of action arose and five days before the case was scheduled for trial, Dow and A.P.& L. filed a joint motion for partial summary judgment, or, in the alternative, a motion in limine. They contended that the plaintiff did not own the part of the orchard allegedly damaged, and as a result he could not recover beyond the term of his leasehold. On the same day, all the defendants' answers were correspondingly amended. Service of the motions and amended answers was by mail to the plaintiff's attorneys. The plaintiff's attorneys received the motions only shortly before July 31, 1991, the day set for trial on the merits. Before the trial began, the motions were heard, and the trial court granted summary judgment for all the defendants. The trial court specifically held: (1) The peach orchard was on land leased by the plaintiff on an annual basis, he could only recover for damage that occurred during his leasehold, and because the 1988 peach crop had already been harvested by the date the spraying occurred, he did not suffer any damages; (2) there was no damage to the tomato crop as a result of the spraying; and (3) there was no damage to the pasture area as a result of the spraying, but, even if there were damage, A.P.& L. had a right to spray its easement.

On appeal, the plaintiff first argues that the motions for summary judgment and the amended answers that were filed on July 26, or just five days before the date set for trial, were untimely. In his argument he points out that A.R.C.P. Rule 56(c) requires that motions for summary judgment be made ten days before the time set for the hearing, and that we have said the requirement of the rule is not a mere formality and should not be treated so lightly as to deprive a party of an opportunity to present

rebutting evidence and argument. *Purser* v. *Corpus Christi State Nat'l Bank*, 258 Ark. 54, 522 S.W.2d 187 (1975). He additionally points out that A.R.C.P. Rule 17 provides that after an objection that the action is not being pursued in the name of the real party in interest, a reasonable time must be allowed for joinder of the real party in interest, in this case, his father, the owner of the real estate. The citations to the rules of civil procedure and to our cases are valid, but we do not consider the argument since the record as designated and abstracted does not contain an objection to the filing of either the amended answers or the motions for summary judgment, and an objection will not be considered when raised for the first time on appeal. *Schmidt* v. *McIlroy Bank & Trust*, 306 Ark. 28, 811 S.W.2d 281 (1991).

The plaintiff alternatively argues that, if the amended answers and motions for summary judgment are allowed to stand, we should reverse the case of *Burnette* v. *Morgan*, 303 Ark. 150, 794 S.W.2d 145 (1990), which the trial judge relied upon in granting summary judgment. We decline to reach the argument as it is raised for the first time on appeal. Since the plaintiff did not object below to the amendments to the answers or the motions for summary judgment, and since the request to overrule *Burnette* v. *Morgan* is made for the first time on appeal, we affirm the trial court's ruling with regard to his leasehold interest in the peach orchard.

■ The plaintiff's second point of appeal involves the alleged damage to his tomato crop. The plaintiff pleaded that the herbicides were sprayed over a pond from which he irrigated his tomatoes. Consequently, he ceased irrigating his tomatoes from the pond, and as a direct result, he lost the balance of his tomato crop. The trial court held that the plaintiff could not recover for the loss of his tomato crop because he had "no proof of any chemicals involved in the spraying operation being in the pond water." The plaintiff assigns the ruling as error, and the assignment is meritorious. It is true that later tests on the water from the pond did not reveal the presence of herbicides, and three of plaintiff's expert witnesses testified by deposition that they were not able to state that the pond was contaminated by the spraying. However, the plaintiff testified by deposition that vegetation to the edge of the pond was killed by the spraying. Gerald King, an employee of the State Plant Board, deposed that he saw hormone-

type herbicide damage to brush growing in the edge of the pond, and Ron Beaty, the local County Agent, testified that common sense would indicate that if the chemicals were sprayed by a helicopter to the very edge of the pond, then some of the herbicides would have gotten into the water. Thus, there is some doubt about the factual issue, and it was error to decide it by summary judgement. *Roland* v. *Gastroenterology Assocs.*, 280 Ark. 278, 657 S.W.2d 536 (1983).

■ The plaintiff's final assignment of error is also a valid one. In one part of the summary judgment a finding of fact made by the trial court is that plaintiff's pasture was not sprayed. In another part of the judgment, the court finds that the plaintiff testified that his pasture was sprayed in the area underneath the power line. Since the plaintiff did in fact testify in his deposition that his pasture was sprayed under the power line we treat the finding as being that the pasture was sprayed. In dismissing the claim for damage to the pasture, the trial court additionally ruled that "the alleged damage to plaintiff's pasture was in an A.P.& L. right-of-way wherein A.P.& L. had the right to maintain and keep clear timber and overhangs from its lines." The judgment constitutes a ruling that A.P.& L. could damage the pasture without liability under the terms of the easement. The "right of way permit" provides that for $45.26 the plaintiff's predecessors in title conveyed to A.P.& L. the right to build and maintain a double line of poles across the land with "the right to clear and keep clear a right-of-way one hundred feet in width, and to remove all other timber and obstructions that may interfere with the use of said line or that may or might be a hazard to the use of the same." However, it was "especially understood" that the plaintiff "shall have full and free use of said right-of-way except for the purposes herein stated; and the right to farm and cultivate and otherwise use said right-of-way by the [plaintiff]." In sum, the easement gives A.P.& L. the right to clear the right-of-way of obstructions that may interfere with the power lines or constitute a hazard to them, but it also gives the plaintiff the "especially understood" right to farm and cultivate the same right-of-way. Therefore, it was error to grant a summary judgment that the easement gave A.P.& L. the unqualified right to damage the pasture land in the right-of-way without liability.

During the oral argument in this court, the plaintiff-appel-

lant moved to dismiss with prejudice his case against Dow Chemical. Dow Chemical then moved to dismiss with prejudice its cross-appeal. Both motions are granted.

Affirmed in part, reversed in part, dismissed with prejudice in part, and remanded for further proceedings.