# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2879
_____

Rudy F. Webb; Betty Webb; Arnez Harper; Charletha Harper, on behalf of
themselves and all others similarly situated

*Plaintiffs - Appellants*

v.

Exxon Mobil Corporation; ExxonMobil Pipeline Company; ExxonMobil Pipeline
Company, L.P.; Mobil Pipe Line Company

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: October 19, 2016
Filed: May 11, 2017
_____

Before RILEY,[1] Chief Judge, WOLLMAN and BENTON, Circuit Judges.
_____

RILEY, Chief Judge.

---

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United
States Court of Appeals for the Eighth Circuit at the close of business on March 10,
2017.  He has been succeeded by the Honorable Lavenski R. Smith.

Approximately seventy years ago, a pipeline company entered into a series of easement contracts with landowners in Texas, Arkansas, Illinois, and Missouri for the purpose of constructing a pipeline that would transport oil from Texas to Illinois. Decades later, the successors-in-interest of those easement contracts brought this suit against the pipeline's current owners and operators, alleging the defendants have breached their easement contracts by failing to reasonably operate, maintain, and repair the pipeline. This lawsuit seeks rescission of their easements and the pipeline's removal or replacement—or in the alternative, damages. After initially certifying the lawsuit as a class action, the district court[2] reversed its decision and granted summary judgment to the defendants. Because we conclude the class was correctly decertified and the claims properly dismissed, we affirm the judgment of the district court.

## I.    BACKGROUND

The relevant portion of the Pegasus Pipeline (pipeline), as it has come to be known, was constructed between 1947 and 1948 and originally stretched approximately 650 miles between Corsicana, Texas, and Pakota, Illinois. Today, the 20-inch pipe, containing both seam and seamless welded steel, covers roughly 850 miles, traveling northeast from Nederland, Texas, through Arkansas and Missouri to Pakota, Illinois. In 2006, the flow of the pipeline was reversed in order to transport oil from Illinois to Texas, and in 2009, an expansion project increased the pipeline's daily capacity by 30,000 barrels of oil. Currently the pipeline can carry up to 95,000 barrels per day.

In April 2013, a group of plaintiffs, who are successors-in-interest to the easement contracts, filed this class action lawsuit against the pipeline's current owners and operators: Exxon Mobil Corporation, ExxonMobil Pipeline Company,

---

[2]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

and Mobil Pipe Line Company (collectively, Exxon).[3]  See Fed. R. Civ. P. 23.  As relevant to the allegations brought forth here, the plaintiffs claim Exxon's operation of the pipeline is unreasonable and unsafe.  Exxon admits the pipeline has suffered "releases" over the years: in 1987 near Corsicana and in 1990 near Bragg, Texas, and—due to a third party, according to Exxon—in 1995 in Hot Springs, Arkansas, and in 2013 near Doniphan, Missouri.  On March 29, 2013, a release of "Wabasca Heavy crude oil" occurred near Mayflower, Arkansas, forcing residents living near the release site to evacuate their homes.  The plaintiffs claim Exxon has materially breached the terms of their easement contracts by failing to inspect, maintain, repair, and replace the pipeline, resulting in hazardous conditions and damages to the plaintiffs' servient estates.

The "right of way" easements include generally similar terms and provisions stating each landowner:

hereby grant[s] and convey[s] to MAGNOLIA PIPE LINE COMPANY . . . its successors and assigns, the rights of way, easements and privileges to lay, repair, maintain, operate and remove pipe lines and replace existing lines with other lines, for the transportation of oil and gas and the products thereof . . . over, across and through Grantor's lands . . . .

TO HAVE AND TO HOLD unto said Magnolia Pipe Line Company, its successors and assigns for the purposes aforesaid.  The said Grantors shall have the right fully to use and enjoy the said premises except for the purposes hereinbefore granted to said Magnolia Pipe Line Company, its successors and assigns, which hereby agrees to pay any damages that may arise to crops, timber or fences from the use of said premises for

---

[3]Plaintiffs named a fourth defendant that Exxon asserts does not exist and was not served separately.

such purposes; said damages if not mutually agreed upon to be ascertained and determined by three disinterested persons . . . . Should more than one pipe line be laid under this grant at any time, fifty cents per rod shall be paid for each additional line so laid, besides the damage above provided for. It is further agreed that said pipes shall be buried to a sufficient depth so as not to interfere with the cultivation of soil.

In light of the alleged breach, the plaintiffs assert they are entitled to rescind their easements and force Exxon to remove the pipeline or replace it; or, alternatively, to recover damages resulting from the breach of contract and diminished value of their properties.

The amended complaint identified Rudy and Betty Webb of Mayflower, Arkansas, and Arnez and Charletha Harper of Conway, Arkansas, as the named plaintiffs for the proposed class. See Fed. R. Civ. P. 23. Opposing the plaintiffs' motion for class certification, Exxon argued the plaintiffs' claims are preempted by the Pipeline Safety Act (PSA), 49 U.S.C. §§ 60101, et seq., and the class was not ascertainable because identification of its members would require individual title searches of thousands of parcels of land. The district court granted class certification, but narrowed the class definition from all easement owners to individuals "who currently own real property subject to an easement for the Pegasus Pipeline *and* who have pipeline physically crossing their property." (Emphasis added). The district court determined the Webbs lacked standing to be class representatives, because although their property is subject to an easement, it has no pipeline crossing it. The district court also determined the lawsuit was not preempted by the PSA because the claims sought to enforce a private easement agreement.

In August and September 2014, respectively, Exxon moved for reconsideration of the district court's certification decision and for summary judgment. Moving for summary judgment, Exxon argued the plaintiffs could not prove breach of the

easement contracts because no affirmative duty of maintenance or repair exists under Arkansas law.  See City of Crossett v. Riles, 549 S.W.2d 800, 801-02 (Ark. 1977).

In early March 2015, Exxon filed a second motion for summary judgment, advancing an additional basis for judgment as a matter of law—that specific performance and rescission were not available remedies under state law.  Two weeks later, the district court granted Exxon's motion for reconsideration of the class certification and first motion for summary judgment, dismissing the plaintiffs' case with prejudice.  Under further scrutiny, the district court determined class certification was improper.  The district court then concluded the suit was federally preempted by the PSA, but "[e]ven if" it were not, the plaintiffs' claims otherwise failed under Arkansas law.  The plaintiffs moved to alter or amend the judgment, but the district court denied their motion.  On appeal, see 28 U.S.C. § 1291 (appellate jurisdiction), the plaintiffs challenge the district court's (1) reversal of certification; (2) grant of summary judgment; and (3) denial of the motion to alter or amend the judgment.

## II.  DISCUSSION
### A.  Class Certification
"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)).  "In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'"  Id. (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)).  "Federal Rule of Civil Procedure 23(a) sets out four threshold requirements that must be met before a plaintiff may file a lawsuit on behalf of a class of persons."  Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir. 2010).  Those are numerosity, commonality, typicality, and adequacy.  See Fed. R. Civ. P.

23(a). Once those requirements are satisfied, the proposed class must also fit within "one of the three subsections of Rule 23(b)." Ebert v. Gen. Mills, Inc., 823 F.3d 472, 477 (8th Cir. 2016) (citation omitted); see Fed. R. Civ. P. 23(b). We review a district court's class action certification decision for an abuse of discretion. See Avritt, 615 F.3d at 1029.

The plaintiffs sought certification under Rule 23(b)(3), which joins plaintiffs whose "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Reversing its original order, the district court concluded the plaintiffs could not satisfy commonality, typicality, or adequacy under Rule 23(a), as the nature of the claims were more "nuanced" than the district court had initially considered. See, e.g., Day v. Celadon Trucking Servs., Inc., 827 F.3d 817, 830 (8th Cir. 2016) ("'Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.'" (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982))). Because the pipeline is comprised of individual segments, the district court reasoned, "Exxon's actions, or inactions, on one individual's land would not necessarily implicate the interests of other landowners," and "trial would necessarily devolve into a parcel-by-parcel analysis of whether Exxon breached the individual easement."

We agree with the district court's assessment. "The 'common contention' in Rule 23(a)(2) 'must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, 998 (8th Cir. 2016) (quoting Dukes, 564 U.S. at 350). The plaintiffs argue they satisfy Rule 23(a)(2) because Exxon, owing the same contractual promises to class members, operates the pipeline uniformly as "*one continuous unit.*" Pivotal to commonality, however, is whether the

"'class members have suffered the same injury,'" in addition to being owed identical duties. Smith v. ConocoPhillips Pipe Line Co., 801 F.3d 921, 925 (8th Cir. 2015) (quoting Dukes, 564 U.S. at 350). Even if Exxon's decisions concerning the transportation of contents throughout the 850-mile pipeline can be considered uniform, the effect is not. In Smith v. ConocoPhillips Pipe Line Co., a putative class of landowners sued the owner of a pipeline alleging contamination coming from a leak in the pipeline had created a nuisance. See id. at 922. We decided fear of contamination was not a sufficient injury to support a claim for nuisance, and "in the absence of evidence showing class members were commonly affected by contamination on their property," the district court abused its discretion by certifying the class. See id. at 927. The claims here are for breach of contract, not nuisance, but establishing breach would require examination of how Exxon's operation of the pipeline affects the plaintiffs, which, as the district court found, varies depending on where individual class members' property is located, as well as many other factors.

While we have our doubts the plaintiffs could meet commonality under Rule 23(a)(2), they cannot meet the "far more demanding" predominance requirement under Rule 23(b)(3). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997); see also Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. ___, ___, 136 S. Ct. 1036, 1045 (2016). To demonstrate predominance under Rule 23(b)(3), we must analyze "whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from [class] member to [class] member." Day, 827 F.3d at 833 (quoting Halvorson v. Auto-Owners Ins. Co., 718 F.3d 773, 778 (8th Cir. 2013)). In Ebert, a group of residential landowners brought a class action lawsuit against a nearby industrial facility claiming its pollution threatened their health and diminished their home values. See Ebert, 823 F.3d at 475. We reversed class certification pursuant to Rule 23(b)(3) because, in order to determine if the properties had been contaminated, the district court would have needed to make a "property-by-property assessment." Id. at 479. The plaintiffs here may assert all of the pipe for

850 miles is bad, but demonstrating breach is more complicated. Beyond determining liability, in Ebert we identified several other individualized issues that prevented certification, including evaluations of each property's unique features and conditions, presence of groundwater, possible mitigating factors, and complicated assessments of diminution in value. See id. Here, the same considerations, unique to each class member's property, complicate class-wide resolution. Too many individual issues predominate over common ones.

Furthermore, the easements may be similar or identical, but the proposed class would join claims arising out of the contract, property, and tort law in four states: Arkansas, Illinois, Texas, and Missouri. See, e.g., United States v. Johansen, 93 F.3d 459, 463 (8th Cir. 1996) ("State law will generally govern the interpretation of a real property conveyance instrument."). "When claims in a class action arise under state law—and the class comprises multiple states—the court must consider whether different state laws will apply to different members of the class." Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 140 (2d Cir. 2015). In this case, as the district court reasoned, proceeding as a class action was not the preferable method of adjudication because it "would potentially invite the application of multiple conflicting state laws." See Amchem Prods., 521 U.S. at 624 ("Differences in state law . . . compound these disparities [under Rule 23(b)(3)]."). The district court did not abuse its discretion by decertifying the class action.[4]

---

[4]Because we agree with the district court's decision to decertify the plaintiffs' class action, the only remaining plaintiffs are Rudy and Betty Webb and Arnez and Charletha Harper of Arkansas. For them, we apply Arkansas law. See, e.g., Blankenship v. USA Truck, Inc., 601 F.3d 852, 856 (8th Cir. 2010).

## B. Breach of Easement Contract

Summary judgment shall be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review de novo a district court's grant of summary judgment, construing the record in the light most favorable to the nonmoving party. See Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). Although the district court decided the plaintiffs' state claims were preempted by the PSA, it concluded that "[e]ven if" they were not, summary judgment was appropriate because "the easement contracts do[] not give rise to a duty under Arkansas law." Because we conclude the claims fail under Arkansas law, we need not consider issues of federal preemption, and we rest our affirmance on state law. See Spirtas Co. v. Nautilus Ins. Co., 715 F.3d 667, 670-71 (8th Cir. 2013) ("This court can affirm on any basis supported in the record."); cf. Columbia Venture, LLC v. Dewberry & Davis, LLC, 604 F.3d 824, 828 (4th Cir. 2010) (holding state law grounds must be decided before courts consider preemption); Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1267 n.7 (10th Cir. 2004) (same); BellSouth Telecomms., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1176 (11th Cir. 2001) (same). Contra N. J. Payphone Ass'n v. Town of West New York, 299 F.3d 235, 239 n.2 (3d Cir. 2002) (deciding preemption may be considered before state law issues).

Although this case involves property law in the sense that it concerns easements, the Webbs' and Harpers' causes of action are for breach of the terms and conditions of their easement contracts. In order to show breach, they must demonstrate Exxon has failed to perform a duty. See Boellner v. Clinical Study Ctrs., LLC, 378 S.W.3d 745, 753 (Ark. 2011) ("When performance of a duty under a contract is contemplated, any nonperformance of that duty is a breach."). To begin, the terms of the easements contain no express contractual provisions imposing duties of maintenance or repair. The only time repair or maintenance is considered is in

contemplation of Exxon's ability to enter the land for those purposes. Still, the Webbs and Harpers contend such duties are always implied in easement contracts.

One Arkansas case, as relied upon by the district court, expressly dismantles this proposition, and "[i]n deciding matters of state law, we are bound by the decisions of the state's highest court." Smith, 801 F.3d at 925 (citation omitted). In City of Crossett v. Riles, the plaintiffs granted the city a 30-foot-wide easement in their backyard so the city could create a drainage ditch to relieve flooding problems. See City of Crossett, 549 S.W.2d at 801. Over ten years after the grant of the easement, the drainage ditch had fallen into disrepair. See id. After one particularly heavy rain, the drainage ditch flooded and caused extensive property damage to the plaintiffs' land. See id. The plaintiffs sued, insisting the city had breached its duty to maintain the ditch to protect the landowners' property. See id. Examining the easement agreement, the court held:

> We can find no language in the instrument, and counsel for the appellees point to none, expressly or impliedly binding the city to construct or maintain or repair the ditch. The instrument is just what its title says, "Grant of Easement." It is essentially a conveyance *by* the grantors *to* the grantee, of certain privileges, with limited protective language in favor of the grantors. Absent any language imposing an affirmative duty of maintenance upon the city, no such duty existed.

Id. at 801-02. But see Restatement (Third) of Property (Servitudes) § 4.13(1) (requiring the "[t]he beneficiary of an easement . . . to repair and maintain the portions of the servient estate . . . used in the enjoyment of the servitude . . . to (a) prevent unreasonable interference with the enjoyment of the servient estate, or (b) avoid liability of the servient-estate owner to third parties").

The Webbs and Harpers suggest subsequent Arkansas cases have "placed an affirmative duty of reasonableness on easement holders and recognized the misuse of easements as being valid claims for servient landowners," but none of these later cases squarely address the duty of maintenance or provide convincing support to persuade us City of Crossett has been effectively overruled. Cf. Sluyter v. Hale Fireworks P'ship, 262 S.W.3d 154, 159 (Ark. 2007) (concerning termination of an easement due to misuse); Dwiggins v. Propst Helicopters, Inc., 832 S.W.2d 840, 843 (Ark. 1992) (ruling summary judgment was granted in error where the trial court granted the easement holder an "unqualified right to damage" the servient estate despite the easement's express terms providing the grantor with the "'especially understood' right to farm and cultivate the same right-of-way").

The Webbs and Harpers assert Exxon has breached their retained "*right to fully use and enjoy*" their properties, and City of Crossett "never addressed the *misuse* of an easement which contractually limited the easement to the extent it might interfere with" that right. Certainly, the Webbs' and Harpers' argument that an easement holder has a duty to exercise its property rights to the easement in a manner that does not interfere with the easement grantor's use and enjoyment of the servient estate is supported by Arkansas law. See Bean v. Johnson, 649 S.W.2d 171, 172 (Ark. 1983) ("When an easement exists, the rights of both parties are reciprocal, and respective owners must use the easement in a manner that will not interfere with the other's rights to utilization and enjoyment of the property."); see also Wilson v. Brown, 897 S.W.2d 546, 550 (Ark. 1995); Craig v. O'Bryan, 301 S.W.2d 18, 21 (Ark. 1957). Despite their belief Exxon has unreasonably operated the pipeline, the Webbs and Harpers concede Exxon has not caused "any damage to any crops, timber, or fences on the [Webbs' and Harpers'] property." Though the amended complaint alleged the pipeline "damaged" property in its path, the Webbs and Harpers have not explained how, or shown any physical injury to their properties, and admittedly not conducted "the necessary activity to determine if the depth of the pipeline would interfere with

the cultivation of the soil." Instead, they claim the pipeline is composed of "bad pipe" and is "worn out." Such vague allegations alone cannot provide the basis for these claims.[5]

Finally, the Webbs and Harpers allege that even if City of Crossett precludes their claims under their easement contracts, they have asserted common law property claims for misuse of an easement and unreasonable interference of property that should have survived summary judgment. Until now, the Webbs and Harpers have based their claims in contract law—not property law—with the evidence of breach being the alleged misuse of the easement. While the question of unreasonable use of an easement is generally one of fact, dependent on the nature of the easement, the terms of the grant, and other relevant circumstances, see Jordan v. Guinn, 485 S.W.2d 715, 720 (Ark. 1972), the evidence here is insufficient to raise a genuine issue of material fact as to whether there was unreasonable interference. See Fed. R. Civ. P. 56(a).

### C.    Motion to Alter or Amend the Judgment

Following the grant of summary judgment to Exxon, the Webbs and Harpers moved to alter or amend the district court's judgment, arguing Exxon had withheld important documents until "a few days before" the district court entered its order, and those untimely produced documents provided material information that amounted to "'newly discovered'" evidence. See Fed. R. Civ. P. 59(e), 60(b)(2). In denying the motion, the district court explained litigation had been ongoing for more than a year

---

[5]The Webbs and Harpers argue the district court improperly limited the unreasonable interference that could give rise to a breach of contract claim "to only odor, discoloration, and physical oil damages." We disagree with that characterization as the district court does not appear to have been limiting damages, but rather providing examples of the types of damages that might support such a claim, which were not shown.

and a "massive amount of discovery had already been performed." The district court concluded the plaintiffs' new evidence did "not address . . . the heart of its [summary judgment] order[, that is,] plaintiffs have not suffered any actual damages."

Motions under Rule 59(e) "serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 & n.3 (8th Cir. 2006) (quoting Innovative Home Health Care v. P. T.-O. T. Assoc. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir.1998)). "Similarly, a Rule 60(b)(2) motion based on the discovery of new evidence must show (1) that the evidence was discovered after the court's order, (2) that the movant exercised diligence to obtain the evidence before entry of the order, (3) that the evidence is not merely cumulative or impeaching, (4) that the evidence is material, and (5) that the evidence would probably have produced a different result." Miller v. Baker Implement Co., 439 F.3d 407, 414 (8th Cir. 2006). "'A district court has broad discretion in determining whether to grant a motion to alter or amend judgment, and this court will not reverse absent a clear abuse of discretion.'" Christensen v. Qwest Pension Plan, 462 F.3d 913, 920 (8th Cir. 2006) (quoting Global Network Techs., Inc. v. Reg'l Airport Auth., 122 F.3d 661, 665 (8th Cir. 1997)).

The Webbs and Harpers contend the district court clearly erred by failing to "rigorously assess[] the evidence" and that Exxon's delayed responses and refusal to agree to electronic search terms unfairly prejudiced their ability "to produce an adequate record" before the district court granted summary judgment. First, we note that central to the Webbs' and Harpers' grievance is their complaint that as part of producing documents in discovery, Exxon made a "classic 'document dump'" and apparently would not agree on search and predictive coding terms. In early December 2014, the plaintiffs filed a motion to compel Exxon to agree to "'predictive coding'

or 'technology assisted review,'" and the district court summarily denied the plaintiffs' motion.

As far as the Webbs' and Harpers' allegations that Exxon's late production of discovery documents should have prevented the grant of summary judgment, they fail to explain why whatever was produced late would have changed the result. Our own review of the attachments to the Webbs' and Harpers' motion to alter or amend the judgment does not convince us the district court clearly abused its discretion in concluding that the additional evidence the Webbs and Harpers sought to introduce would not have, as the district court said, "produce[d] a different result." We find no basis for reversal here.

## III.  CONCLUSION
We affirm the judgment of the district court.

_____